# Webb *v.* The State.

## *Indictment for Murder.*

1. *Homicide; admissibility of evidence as to threats.*—On a trial under an indictment for murder, it was shown that the person killed by the defendant was a policeman. The evidence for the State tended to show that on the night of the killing and prior thereto the defendant presented a pistol at one B. and made him leave the latter's room; that later during the night B. preferred a charge against the defendant and requested the police officer who was killed to arrest him; that B. and another person accompanied the deceased to the room where the defendant was; that the deceased announced to the defendant that he was an officer and was there to arrest him and demanded that the door be opened; that suddenly the door was opened, the defendant fired several shots, one of which killed the officer. A witness, who was in the room with the defendant at the time of the shooting, testified that she heard nothing in the hall just before the shooting except when B. asked if the defendant was in, and she told B. to go away and have no trouble. B. testified that he asked if the defendant was in the room and then the officer told the defendant to consider himself under arrest. On the cross-examination he testified that he did not threaten the life of the defendant or have any trouble with him previous to the night of the homicide. There was evidence that the defendant had said after his arrest that if he had known it was an officer who was at the door, he would not have shot him. *Held*: It was not competent on the cross-examination of a witness in behalf of the defendant who testified to her having been in the house at the time of the shooting, for the defendant to ask said witness: "If that night she heard B. make threats against the defendant?"

2. *Homicide; charge of court to jury.*—On a trial under an indictment for the murder of one Walton, a charge requested by the defendant is erroneous and properly refused which instructs the jury that "Premeditation means the prior determination on the part of the defendant to take the life of Walton; and if the jury are not satisfied from all the evidence in the case beyond all reasonable doubt, and have

[Webb v. The State.]

an abiding conviction to a moral certainty, that defendant had a prior determination to take the life of Walton, before he fired the shot, the jury can not convict him of murder in the first degree."

3. *Same; charge as to premeditation.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "Premeditation means to think on or revolve in the mind beforehand, and unless the jury are satisfied beyond all reasonable doubt, and have an abiding conviction to a moral certainty, from all the evidence in the case, that defendant had time to think and, revolve, or turn over in his mind, the probable consequences of his act before he fired the shot, and that defendant contrived and designed previous to the firing of the shot, to take the life of deceased, the jury can not find the defendant guilty of murder in the first degree."

4. *Trial and its incidents; argument of attorney.*—On the trial of a criminal case, the solicitor for the State does not transgress the latitude allowed in argument by stating to the jury that as the representative of the State he has no interest in the conviction of any man and would not permit the conviction of an innocent man if he knew it; that he received his salary whether or not there was a single conviction, and that he had no interest in the case except to see the law enforced.

5. *Trial and its incidents; motion for continuance.*—In the trial of a criminal case, a motion for a continuance of the cause is addressed to the sound discretion of the trial court; and in the absence of palpable abuse of such discretion, the ruling of the trial court on said motion will not be reviewed on appeal.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. D. A. GREENE.

The appellant in this case, Jim Webb, was indicted, tried and convicted for the murder of William P. Walton, and sentenced to be hanged.

Upon the call of the case the State announced ready but the defendant asked for a continuance of the cause upon the following grounds: "First. The absence of two material witnesses for whom subpoenas had been issued in his behalf; second, that the crime for which the defendant was indicted had been committed a little more than a month previous and defendant should not be put on trial this early; and upon

the further ground that defendant's counsel had not had the opportunity to have a full and complete consultation in private with his client." Upon the hearing of this motion the court ascertained that the two witnesses whose absence was made a ground for asking for a continuance had been subpoenaed and that the subpoena had been returned "not found" by the sheriff of Jefferson county; and that neither the defendant nor his counsel could give any information as to their whereabouts, or as to whether they were within the jurisdiction of the court, and that said two parties so subpoenaed were not eye witnesses to the alleged killing, and that every eye witness acquainted with the facts of the killing had been summoned and was then present. As to the second ground the court ascertained that thirty days had elapsed from the time of the killing to the time of the trial; that the defendant had employed counsel immediately after the arrest; that such counsel was present at the preliminary trial of the defendant and conferred with him privately from time to time while he was in jail, etc. The court overruled the motion for a continuance, and to this ruling the defendant duly excepted. The facts relating to the hamicide are sufficiently stated in the opinion.

The bill of exceptions contains the following recital as to the argument of the solicitor: "The solicitor, in his argument to the jury, stated that as a representative of the State he had no interest in the conviction of any man, except as an officer of the law, and would not permit the conviction of any innocent man if he knew it; that he got his salary whether or not there was a single conviction; that his salary was paid just as the jury's *per diem* was paid whether all the defendants were acquitted or convicted; that he had no interest in any case except to see the law enforced. The defendant's counsel objected to this argument of the solicitor, the court overruled the objection, and defendant excepted."

The defendant requested the court to give the jury the following written charges and separately excepted to the court's refusal to give each of them as asked: (1.) "Premeditation means the prior determination on the

part of the defendant to take the life of Walton; and if the jury are not satisfied from all the evidence in the case beyond all reasonable doubt, and have an abiding conviction to a moral certainty, that defendant had a prior determination to take the life of Walton before he fired the fatal shot, the jury cannot convict him of murder in the first degree." (2.) "Premeditation means to think on or revolve in the mind beforehand, and unless the jury are satisfied beyond all reasonable doubt, and have an abiding conviction to a moral certainty from all the evidence in the case that defendant had time to think and revolve or turn over in his mind the probable consequences of his act before he fired the shot, and that defendant contrived and designed previous to the firing of the shot to take the life of deceased the jury cannot find the defendant guilty of murder in the first degree."

R. L. Leatherwood, for appellant, cited *Grainger v. State*, 5 Yeager 459; 2 Starkie's Evidence 950; Wharton's Criminal Law 258; *State v. Rutherford*, 1 Hawks 457; Wheeler's Crim. Cases 507; *Copeland v. State*, 7 Humph. 481; *White v. State*, 85 Ala. 69.

Chas. G. Brown, Attorney-General for the State, cited *King v. State*, 90 Ala. 612; *Jones v. State*, 116 Ala. 468; *Daughdrill v. State*, 113 Ala. 31.

SHARPE, J.—On an indictment charging him with the murder of William P. Walton, defendant was convicted of murder in the first degree. On the trial it was shown that Walton was a police officer of Birmingham. Evidence for the State tended to show that on the night of the killing, defendant had presented a pistol at one John Brown and made Brown leave the latter's room; that about midnight Brown preferred a charge against defendant and requested the deceased to arrest him; that Brown went with deceased and one Cochran through a dark hallway to a closed door leading from the hall into a room where the defendant and one Lilly Page were; that deceased then announced to defendant that he was an officer and was there to ar-

rest him, and demanded that the door be opened and attempted to shove it open; that suddenly the door opened and defendant fired several shots, the second of which struck the deceased who died about a minute thereafter; that defendant shot twice after the deceased was shot down; that after he had fired two or three times the deceased fired one shot, and Cochran shot three times at the defendant, who at that time escaped through the door. A witness for the State testified that she was in the room with defendant and heard nothing said in the hall except by Brown, who asked if defendant was in; that she told Brown to go away and have no trouble, and then the door fell in and the shooting began. Brown testified he asked at the door if defendant was in and deceased when at the door said he was an officer, and told defendant to consider himself under arrest. This witness on cross-exaination said that he had never threatened the life of defendant or had any trouble with him previous to the night of the homicide. There was also evidence adduced by the State that defendant after his arrest stated, among other things, "that if he had known it was Mr. Walton he would not have shot him; that as he got to the top of the stairs he saw it was an officer and shot him, but did not know it was Mr. Walton." At this stage of the evidence a witness was examined in behalf of defendant who testified she heard Brown come in the house and ask if defendant was there, that Lilly Page told him not to have any fuss and immediately the shooting began and Brown and Cochran ran down the steps; that she was downstairs at the time of the shooting and when she went upstairs next morning she saw the door broken and lying on the floor, and that everything in the room was broken, that there was a lamp half full of oil, and that she did not know of any fuss between defendant and Brown. Here defendant asked this witness: "If that night she heard John Brown make any threats against defendant?" The court sustained an objection to this question and defendant excepted. Thereafter other witnesses were examined for the defense, and defendant, according to the bill of exceptions, testified, among other things, "that just before the killing

he was talking with John Brown; that they had no particular fuss, but that when John left, he said 'I will get you yet, you son of a bitch.' In about half an hour, he returned and said 'Open the door,' and the door began to break in from the outside. Witness then threw his hand up to catch the door; the lamp went out and the door fell. Just then he saw the barrel of a pistol pointing in the door, and the door fell against his arm, and he immediately fired two shots; that shots came from the outside, however, before he fired any shots; that he did not know the policeman was there; did not hear him say he came to arrest him, but thought it was John coming back to renew the difficulty, that he thought he was shooting at John Brown all the time, that he did not know he had shot the policeman or any body else except Brown until some time after his arrest.   *   *   One shot was fired before he fired at all and the first shot struck him in the arm, that he never saw any one at all when he was firing."

The objection to the question above referred to was properly sustained. Brown's statement in denial of threats was not made with reference to any particular time or place brought to his attention so as to lay a predicate for impeaching him. The inquiry extended to the whole night including that part of it which followed as well as that part which preceded the shooting and, therefore, cannot be considered as relating merely to the *res gestae* of the homicide; but if the question could be construed as calling for threats uttered before the shooting, it would have been objectionable in the absence of anything to indicate such threats had been communicated to defendant. There are cases involving self-defense where under the rules laid down in *Roberts v. State*, 68 Ala. 156, uncommunicated threats are admissible as tending to show which of the parties to a difficulty was the aggressor, and also as showing the animus of an attack made on a defendant, and such threats are sometimes provable as corroborative of evidence of other threats which were communicated; but there was no evidence that defendant was really being attacked by Brown, and threats of which he was ignorant could not have any agency in inducing him to apprehend an attack from

Brown. Nor had there been before the ruling any evidence adduced of threats communicated to the defendand which could have been strengthened by proof of other threats, and the court was not bound to admit evidence which was *prima facie* irrelevant in anticipation that it might become relevant at a later stage of the trial.

Except a change in the name of the person slain, the charges refused to defendant are copies of charges which in *Daughdrill v. State,* 113 Ala. 9, were condemned as having a tendency to mislead the jury as to what constitutes the deliberation and premeditation which are necessary ingredients of murder in the first degree. The charges are bad for the reasons given in the opinion in *Daughdrill's case,* and in view of the circumstances disclosed by the evidence, the charges were bad for the reason that they each assume a specific intent to kill the deceased was essential to make the defendant guilty of murder in the first degree, whereas neither the fact nor degree of his guilt depended on whether he knew the identity of the person at whom he shot.

What the solicitor said in disclaiming pecuniary interest in the case and all interest except to see the law enforced was not without the latitude allowable in argument of counsel.—*Taylor v. State,* 134 Mo. 109, 35 S. W. Rep. 92.

The facts relating to defendant's motion for a continuance do not show the refusal of that motion involved any abuse of the court's discretion.

No reversible error is found in the record.

Affirmed.