(No. 20054.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JUST LANGAAS, Plaintiff in Error.

*Opinion filed April 17, 1930.*

BURKE & CRANE, (JAMES M. BURKE, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and ROY D. JOHNSON, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Just Langaas (hereafter referred to as defendant) was indicted in the criminal court of Cook county for taking indecent liberties with Shirley Streit, a child seven years of age. He was found guilty by the verdict of the jury, and after motions for a new trial and in arrest of judgment were overruled by the court he was sentenced to the penitentiary. He brings the case here for review by writ of error.

The principal error assigned and argued in the brief of defendant is that the verdict was contrary to the evidence, although there are other errors assigned.

Shirley Streit testified she was seven years old, and that. on the morning of February 12, 1929, about 9:00 o'clock, she went into the delicatessen store of defendant, which was across the alley from where Shirley lived. She went to buy bread and biscuits, but defendant told her he had no biscuits but that she could get them across the street. He then unbuttoned his trousers and put her hand in them and made her rub his privates. She then left her bread in defendant's store and went across the street to the bakery and got her buns. She came back to the store to get her bread and went home. She testified defendant asked her what her name was, her grade in school, what grade her sister was in, what her teacher's name was and what room she was in. He lifted her up and set her on the counter. He put a piece of candy in her mouth, and while he was doing that asked her her sister's name and her teacher's· name. When she returned to the store with the biscuits to get her bread she said good-by and went home and told her mother. She said that defendant, when she was in the store, was behind the counter. She remembered telling at the preliminary examination that defendant asked her to come back of the counter but that he did not ask her any .

such thing. He came from behind the counter, and what she said happened right in the space by the ice cream box. He did not pick her up but put a piece of candy in her mouth. She was gone about five minutes when she went to the bakery to get her buns. She did not ask defendant for any candy. She said she had been going to his store for a long time and he waited on her many times but never did anything like that before. She said what he did happened when she was up on the counter. The candy was in a jar next to the cookie jar back of the cashier. He never told her to say nothing about it.

The prosecuting witness' mother testified that her daughter was gone to the store about twenty-five minutes. She said when she returned home she was nervous but was not crying, and that witness went to the store and scolded defendant, who said he was sorry. She told him she was going to tell her husband. She left the store and went to her husband. When she went to defendant's store she could not remember whether she asked him what he had done to the little girl. The only words he used were, "I am sorry." She said she sent the prosecuting witness to the store of defendant about every day.

The prosecuting witness' father testified that his wife, the prosecuting witness and another child came to his office about noon the day of the alleged transaction. After his wife told him the story he put them in his car to go home. At Seventy-ninth street he picked up officer Julius Erdman and told him what his wife told witness. The officer drove with them to defendant's place of business, and witness told defendant he had an officer there for what he had done to witness' daughter. He testified defendant said he put witness' daughter on the counter and kissed her, and he was sorry. Defendant said he did nothing wrong, and then the officer arrested him. The officer testified defendant denied doing anything to the child except to pick her up and kiss her; that he thought a lot of the little girl.

This is the substance of the most material evidence for the State.

Defendant testified for himself that he was thirty years old and had operated a store about two and a half years. He came to this country from Norway. His partner is Charles Bergh. He remembered the little girl coming to his store, and that it was about nine o'clock in the morning. He was washing off the counter. The front of the store is all glass, with a glass door in the middle. On that particular day the windows were all clear. He described the interior arrangement of the store. There is a room back of the store, and people being waited on at the counter in the store could see into the back room. When the little girl came in she asked for a loaf of bread. When he wrapped up the bread for her he asked her if she wanted anything else, and she said she wanted some buns. He told her he had none but she could get them across the street. She gave him a half-dollar when he gave her the bread and he gave her back forty cents in change. Olav Heidenberg, who worked in the store, was sitting in the room just back of the store, reading a book. The little girl went across the street, got the buns, returned to the store, secured her loaf of bread and then left. He denied opening his trousers and placing the child's hand in them. He denied giving her a piece of candy and testified they had no candy on that counter, and he gave her no candy after she came back from securing the buns. He testified he did not lift her up and put her on the counter. He lifted her up a couple of inches and asked her, "How are you, girlie?" He said he knew her well. She had been coming to his store for a year. He testified the child's mother came to the store about 11:00 o'clock and started to "bawl him out" about what he did to her child. He did not know which child she meant, because he did not recognize her. She told him he had mistreated her little girl who was there that morning. He replied he had never mistreated any child. When he

recognized the child from the description of her mother he said he never did anything to the little girl. Mrs. Streit was angry and scolded him. Abe Hanisch and Heidenberg were in the room back of the store. Defendant further testified that when Mrs. Streit and officer Erdman called at 1 :00 o'clock he was lying on the couch, resting. Mrs. Streit, her husband and the officer came in, and the officer asked, "Is this the fellow?" pointing to Hanisch, and Mrs. Streit said, "No; this is the fellow here," pointing to defendant, and the officer told him to get his clothes on and come along. He asked the officer what for, and the officer told him he would know all about it when he came to the station. He denied he ever told the officer or the prosecuting witness' father that he ever kissed or caressed the girl, and that Hanisch was present at this conversation. He denied he ever said to Mrs. Streit he was sorry. He said somebody was coming into the store every minute of the day. He remembered the shoemaker, the milkman and a number of salesmen calling the day the prosecuting witness claimed she was attacked. Mrs. Seelig was just outside, in her car. She had come to the store to take defendant's partner to the hospital. He testified he was never arrested before. The corner where his store was is a busy corner, with people passing all the time. He testified he never had any peppermint candy, which was the kind the child described as having been given to her. Mrs. Seelig was sitting in her car in front of the store about ten minutes. He testified that one could see people come into the store from the room in the rear of it.

Olav Heidenberg testified he had known defendant for two and a half years, and he knew the little girl, Shirley. He heard her testify. He was sitting right in back of the store, reading a book, on February 12, 1929, about 9 :00 o'clock. He was helping defendant in the store because Bergh, his partner, was sick. He lived and slept there. He was sitting right outside the door and could look into

the store, and the door was wide open. He could hear every word of any conversation that was taking place in the store. He had waited on the prosecuting witness in the store. He saw her come in the store on February 12 and heard defendant ask, "How are you, girlie, and what do you want?" She said, "A loaf of bread," and while he was wrapping it she said she wanted some buns, and defendant said he did not have them but she could get them across the street at the bakery. Witness testified he had waited on the little girl many times, and a few times she had asked him for candy, but he would not give it to her. He was in the room back of the store when Mrs. Streit came in. Defendant was in the front part of the store. Defendant told Mrs. Streit he did not know what she was talking about. She slammed the door and went out, and about 1:00 o'clock the same day Mr. and Mrs. Streit and an officer came into the store. Defendant was in the room back of the store, on a cot, asleep. Witness testified he had seen the prosecuting witness around the store many times since Feruary 12, on the outside and in front of the store, making faces. He testified that he never saw any red and white peppermint candy while he was in the store. He saw defendant go to get the bread for the child and saw him come back, and he never went outside of the counter. A card-board partition separates the store from the living room back of it.

Abe Hanisch testified for defendant that he was twenty-nine years old and a housemover by occupation but was then unemployed. On February 12, 1929, he was working for Bergh, who is associated with defendant in the store. On the morning of February 12 defendant was working in the store and witness was in the rear of the store when an officer and Mr. and Mrs. Streit came into the rear room. Defendant was lying on the couch in the room. The officer told defendant to get his clothes on and come with him to the station. He did not hear the officer ask defendant what

he had done to the little girl and did not hear defendant say he kissed her. Defendant got his hat and coat and left. Witness is positive he heard all that was said between the parties at that time. He testified he had waited on the prosecuting witness many times. She has asked witness to give her candy. He was asleep when she came into the store the morning of February 12. He woke up about 10:00 o'clock and remembered the prosecuting witness' mother coming to the store. She talked very fast and he could not catch everything she said. He heard defendant tell Mrs. Streit that he did not know what she meant. She left, then.

Mrs. Seelig testified that she shops at defendant and Bergh's store. She knew them both personally but had known Bergh longer. About 9:15 o'clock in the morning of February 12, 1929, she drove up to the entrance of the store and remained outside waiting for Bergh, as she had agreed to drive him to the hospital. The front of the store has two large plate glass windows and a glass door. The weather was cold but very clear, and she could see into the store from where she was sitting in the car. She had seen Shirley Streit many times in the store and outside, playing. She saw her go into the store that morning. She saw defendant go behind the counter and bring the bread back. She was sitting watching them, looking in the store. Bergh had already gone, it seems, when witness drove up to the store, but she did not know it. She saw lots of people going into the store and plenty of people passing by. The girl came out of the store, and then in a little while went back into it but did not stay there long. She was not eating candy and had none in her mouth. After the child left, defendant came out and told Mrs. Seelig Bergh had gone. A month before testifying, witness was in the back room using the telephone when Shirley Streit gave the window "an awful rap" and she saw her making faces at defendant. She did not see defendant lift the child to the counter from

the front of the store. She said she was watching the inside of the store for Bergh to come out. She had seen the prosecuting witness in the store a number of times.

Mrs. Gurina Baker testified that she lived about one and one-half blocks from defendant's store; that her children often go to the store; that the youngest is four, one six, one nine and another ten, and the oldest is eighteen; that she frequently sent them to the store. She testified defendant's reputation in every way was good. So also did Mrs. Anna McBride and Mrs. Catherine Maloney, both of whom sent their children to defendant's store to buy things.

Charles Bergh, defendant's partner, testified he was in the hospital a while and that while he was there he hired Heidenberg and Hanisch to look after his business. The evening of February 11 he made an appointment with Mrs. Seelig for the morning of the 12th, but did not keep the appointment because he went with his brother on the North Side the night before. He said he knew Shirley Streit and had seen her in the store many times and had often talked to her mother. He testified that about a month before testifying he saw Shirley in front of the store. She had the door half open and pounded the window where they kept candy, and said, "Please give me a piece of candy and I will not send your friend to jail." He told her to keep away from there.

This case presents a very peculiar phase of human nature. The crime charged is so revolting to every sense of decency that when made by a child seven years old it unquestionably places a defendant at a decided disadvantage. As is usually the case, the testimony of the prosecuting witness was practically uncorroborated. Defendant denied doing the acts with which he was charged and which no third person saw, and he produced two witnesses who were in a position at the time to see the inside of the store, who testified they saw nothing of the kind. The crime

charged is similar to that of rape, which Lord Hale said was an accusation easily made, hard to be proved, and still harder to be defended by one ever so innocent. (*Shirwin* v. *People,* 69 Ill. 55; *People* v. *Blanch,* 309 id. 426.) In *People* v. *Freeman,* 244 Ill. 590, the court said: "Public indignation is even more apt to be aroused in prosecutions for crimes of this kind against children than when the charge is brought by an adult. It is especially necessary that the court should carefully examine the evidence in such cases in order to see that the verdict is not the result of passion or prejudice on the part of the jury." In that case the court further said that "to justify a conviction for rape on the uncorroborated testimony of the prosecutrix such testimony must be most clear and convincing." Defendant proved that he had maintained a good reputation and had never been charged with the commission of a crime before. While that proof is not proof of innocence it may raise a reasonable doubt of defendant's guilt. (*People* v. *Donahoe,* 279 Ill. 411.) The prosecuting witness' testimony was not corroborated by any other evidence, while defendant's testimony was corroborated, in a measure, by the testimony of Mrs. Seelig, Hanisch and Heidenberg. If the charge were true the punishment is just, for no one could have any sympathy with a man who would commit such a crime. However, where the evidence is unsatisfactory or preponderates in favor of the accused it is the duty of a court of review to reverse a judgment of conviction. (*Keller* v. *People,* 204 Ill. 604; *Cunningham* v. *People,* 210 id. 410.) The evidence in this case is so contradictory and unsatisfactory that, as stated in the opinion of the court in *People .v. Blanch, supra,* "this court will be better satisfied if the question of the guilt of plaintiff in error is presented to another jury."

The judgment of the criminal court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*