# TERRITORY OF HAWAII *v.* GEORGE SUSUMI KINOSHITA.

## No. 2642.

SUBMITTED APRIL 5, 1949.          DECIDED APRIL 20, 1949.

KEMP, C. J., LE BARON AND CRISTY, JJ.

OPINION OF THE COURT BY CRISTY, J.

This is a writ of error to review a judgment of conviction of the crime of indecent assault.

Section 11666, Revised Laws of Hawaii 1945, defines the crime as follows: "Whoever takes indecent and improper liberties with the person of a female child under the age of twelve years without committing or intending to commit the crime of rape shall be deemed guilty of indecent assault and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment at hard labor for not more than five years or both."

The plaintiff in error, defendant below (hereinafter called the defendant), was charged under an indictment duly returned on August 1, 1946, in that he, "at the City and County of Honolulu * * * on the 9th day of June, 1946, did unlawfully, feloniously and without authority and without justification by law, take indecent and improper liberties with the person of one [naming her], a female child under the age of twelve years * * * and did then and there and thereby commit the crime of indecent assault, contrary to the form of the statute in such case made and provided." The indictment was not challenged below or here.

Trial was held, jury waived. On the conclusion thereof the trial judge convicted and sentenced the defendant for the crime of indecent assault. At the trial the mother of the alleged victim was a witness for the prosecution. In substance, on her direct testimony, she stated that about nine-thirty on the morning of June 9, 1946, she had taken her three-year-old son to the barber, leaving her four-and-a-half-year-old daughter playing in the neighborhood of the International Theatre and parking lot, situate just in front of her home in Aala Lane in Honolulu. She returned from the barbershop with her boy around ten-twenty the same morning and found the defendant sitting on the steps of the theatre and talking with her daughter. The mother went back to her home, leaving the children

in company with the defendant. Shortly thereafter the young daughter came to ask permission to go to the show with the defendant. Permission being granted, the daughter left. After the show and between twelve-thirty and one o'clock the daughter returned home. The mother and daughter then had a conversation.

On direct examination, on objection by defendant's attorney, the mother was not permitted to testify as to the conversation by the daughter on her return home "after the show." But the conversation was fully brought out upon cross-examination and redirect. The child's part of the conversation admittedly described an indecent assault upon her by the defendant and concluded with the words: "I run home. I scared, Mommy." A primary detail of the assault as related by the child was that the defendant had her "play horsey" on his private organ. Earlier on the same day the defendant was overheard by another witness to invite the child to go with him into a parked truck and "play horsey." On the afternoon of the next day the child and her mother were passing the barbershop. The child caught sight of the defendant, immediately called her mother's attention to him and in the presence of the defendant repeated the details of the former conversation. The defendant, when thus accused, responded: "that he never meant no harm because he liked the child * * * I didn't mean to." Then, when the mother upbraided him and another witness sought to question him, the defendant ran away. When apprehended later on by the police, and identified by the mother and child, the defendant denied ever having seen either mother or child prior to his arrest.

After the prosecution had rested, defendant's attorney moved for dismissal on the ground that the prosecution had failed "to produce the corpus delicti." The motion was denied, the court stating: "You proved the corpus

delicti on cross-examination." No exception to the ruling was taken. Then witnesses were presented on behalf of the defendant in an attempt to present an alibi both as to the morning of June 9 and as to the afternoon of June 10. The trial judge rejected the theory of alibi in his findings. The defendant did not present himself as a witness.

After further continuance of the hearing, search of authorities and argument of counsel, the court stated its findings and ruling in the following language: "For the purpose of the record, the Court is going to consider this evidence given on cross-examination as part of the res gestae, and it is accorded its weight as hearsay evidence elicited by the defendant and, of course, it is admissible under those grounds. The Court is frank to state had this been just the testimony of the girl that there would be serious doubt in the Court's mind as to what the situation was. We have had in this case certain disinterested witnesses, that is the parking lot person, who testified that he saw this man not only on the day in question, but on several other occasions with this little girl. The defendant, according to [one of the witnesses], stated that he did not mean to do the girl any harm; that he had bought candy and ice cream for her on occasions, and that when they were discussing calling an officer this man faded out of the picture, and it is apparent from the testimony of his own witnesses that his usual habits, of at least going to a restaurant where he usually dined, ceased at that time, and it was some time after that, I think it was July 11th, that he was apprehended, in other words a little over a month from the happening of this event. That at that [time] this man denied emphatically of ever having seen this girl or her mother. * * *

"This Court is convinced that this man has seen this woman and this girl, and when he denies ever having

seen them and you start to add up all these other pieces of evidence it seems the circumstances add up to this, that this girl had been taken liberties with by this man; that he knew that he was wrong and so stated that he was wrong; and then when he was apprehended denied ever having known her. It is the Judgment of the Court that the defendant is guilty as charged." Defendant's attorney saved an exception to this ruling. At a later date the defendant was sentenced and an exception was taken to the sentence "as being contrary to the law and the evidence and the weight of the evidence."

In this court the following errors have been specified:

1. "That the Court erred in treating and considering as part of res gestae the evidence of complaint of [the young girl, naming her] to [the mother, naming her] some two and one-half (2½) hours after the commission of the alleged offense when said [the young girl], a minor and four and one-half years of age, was presumably an incompetent witness on account of her immature years and not a witness in the case, and in the light of the evidence as to what said [young girl] did during the two and one-half (2½) hours between the time of the commission of the alleged offense and the time of making the complaint."

2. "That the Court erred in considering and giving weight and credit to the hearsay testimony of * * * mother of the alleged victim and one of the important complaining witnesses, the complaint of which was made to her, the said [mother], by the alleged victim [the young daughter], some two and one-half (2½) hours after the commission of the alleged offense."

3. "That the Court erred in pronouncing sentence on the defendant when the judgment was not sustained by the evidence in that the prosecution failed to prove by requisite proof beyond all reasonable doubt the identity

of the perpetrator of the alleged offense—an essential ingredient or element of the corpus delicti of the crime of Indecent Assault."

The errors specified will be taken up in the above sequence.

1. The issue raised under the first specified error may be restated: were the declarations of the four-and-one-half-year-old daughter to her mother, as testified by the mother, legally before the court for all purposes under any recognized exception to the hearsay rule? The record shows that, although the young girl was present at the trial and identified in the presence of the court, yet she was presumed to be an incompetent witness and was not presented to testify. The fact that the youngster's statements were first elicited on cross-examination by defendant's attorney and amplified on redirect is not material to the issues presented. No exceptions were preserved to the admission of this testimony. Yet the question of their admissibility is inextricably involved in considering their legal import. If these statements constitute mere hearsay, as not coming within any recognized exception, their probative value would be nil.[1] If, on the other hand, such statements constitute proper evidence that is admissible under a recognized exception to the hearsay rule, then their content was open to be weighed by the trial court in connection with all the circumstances given in evidence.[2]

Incidentally, it must be noted that the specifications of error erroneously assume that the alleged offense was pinned down to a definite hour in the morning of June 9. The evidence is not so specific. The companionship of the

---

[1] See Eastlick v. Southern Ry. Co., 116 Ga. 48, 42 S. E. 499; Inman v. State, 23 Ala. App. 484, 127 So. 262; Kilgore v. State, 25 Okla. Cr. 69, 219 Pac. 160.

[2] See 22 C. J. p. 448, n. 32; 32 C. J. S. p. 47, n. 49; St. Clair v. United States, 154 U. S. 134, 149, quoting from 1 Wharton, Evidence (2d ed.) § 259; Snowden v. The United States, 2 App. Cas. D. C. 89.

defendant with the young girl during the morning of June 9 was before the trial court under the testimony of the mother who saw and talked with him; under the testimony of the parking lot attendant who heard defendant's invitation to the girl whilst she was there in company with her brother; under the testimony of a third witness who heard the accusations against, and the responses of, the defendant on the next day, as well as under the mother's testimony concerning defendant's responses when accused. This testimony, if believed, placed the defendant in company with the young girl and her brother during the morning of June 9 from about ten o'clock to somewhere in the neighborhood of twelve-thirty to one p. m. Immediately upon the child's return at the latter time to resume association with her mother "after the show," the mother asked: "How was the show?" The child's response was: "Oh, the show was all right, but the man bad." The child then proceeded immediately with the statements of actions characterizing indecent assault by the defendant. In other words, any memories as to the show were immediately sidetracked by the sensations aroused by the conduct of the defendant whilst the child had been with him. The child's statements at that time concluded with the words "I run home. I scared, Mommy." Hence, whether the child's declarations reflect conduct of the defendant which had just terminated or occurred during some other part of the morning companionship is not specific.

The question at issue then is whether the child's statements as so given immediately upon resuming companionship with her mother are legally admissible as evidence under the *res gestae* exception to the hearsay rule, otherwise referred to as spontaneous declarations. If so, this evidence may then be considered as substantive evidence of content under the recognized exception and may be

tested as to its credibility and weight with all the other circumstances in evidence.

Literally, *res gestae* means the thing in action. Hence, the element relating to the time when such statements were made is but one of the factors entering into the determination as to whether declarations were "spontaneous," "natural," "impulsive," "instinctive," "generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate."[3]

In cases involving abuse of female children, statements of the child victims have been generally admitted as part of the *res gestae* when meeting the test of spontaneity, and notwithstanding that the declarant is an incompetent witness by reason of immaturity.[4] In this realm of the law it has been repeatedly pointed out that each case must be judged on its special circumstances. Cases have been cited to this court on behalf of the defendant where different results were reached on their special facts. These cases have been examined but have been found clearly distinguishable on the facts or not persuasive in their reasoning as applied to the instant case.[5]

It must be noted that in the cases cited in the margin by this court the declarations of the minor victims were accompanied by some evidence of a physical nature, indicating assault or hysteria, crying. Yet, however much such factors may affect their ultimate credibility or weight

[3] VI Wigmore, Evidence (3d ed.) § 1749, p. 139; Solice v. State, 21 Ariz. 592, 193 Pac. 19.

[4] Snowden v. The United States, cited supra at n. 2; Soto v. Territory, 12 Ariz. 36, 94 Pac. 1104; State v. Coram, 116 W. Va. 492, 182 S. E. 83; State v. Godwin, 51 N. M. 65, 178 P. (2d) 584; Matt Williams v. The State, 145 Tex. Cr. R. 536, 170 S. W. (2d) 482.

[5] See Brown v. United States, 80 App. Cas. D. C. 270, 152 F. (2d) 138; The People v. Langaas, 339 Ill. 267, 171 N. E. 144. In the latter case the child herself was a witness and, on a review, much conflicting evidence was found to be "so contradictory and unsatisfactory" that the court remanded for another trial.

when considered by the trier of the fact, the presence or absence of such factors are not necessarily conclusive on the admissibility of the declarations as spontaneous utterances.[6]

In connection with the utterances of a child under five years of age, to speak of "recovery of mental balance" or "control of reflective faculties" or "deliberate design" or "free meditation" or "reasoned reflection" is to ignore that children of such tender years live primarily in their sense perceptions and in the feelings and sensations aroused by them. Moreover, such sensations and feelings may be vividly revived by the reappearance, in proximity to them, of the persons responsible for the primary experience. The statements of such children may be clearly susceptible to the characterization that they are "an expression of feeling forced from the declarant by the pressure of the circumstances under which [they are] made, rather than the narrative result of thought."[7] The admission in evidence of such statements rests largely within the discretion of the trial court.[8]

Where a female child under the age of five years, presumably incompetent to be a witness, is shown by other evidence to have been in company with the accused, under circumstances raising a question of his innocent or criminal intentions and where, on resuming companionship with her mother, such child tells the mother of indecent and improper liberties having been taken by the accused upon her person, such declarations become admissible under the discretion of the trial court and when admitted are substantive evidence of the conduct described

---

[6] Beausoliel v. United States, 71 App. Cas. D. C. 111, 107 F. (2d) 292.

[7] 32 C. J. S. p. 47 (citing cases).

[8] See Webb v. The State, 135 Ala. 36, 33 So. 487; 22 C. J. § 550, p. 462.

under the recognized exception to the hearsay rule, variously characterized as part of the *res gestae* or spontaneous declarations; nor is it decisive against the admissibility of such declarations that the statements were made in response to a question; nor is the time element controlling; and once admitted, the credibility and weight to be given such declarations are for the trier of the facts. In the instant case the declarations referred to under the first specified error come within the exception and hence were properly subject to be weighed by the trial court.

2. The foregoing discussion under the first specified error practically disposes of the second. The record shows that the trial judge weighed the declarations against the other evidence in order to determine whether he was convinced beyond a reasonable doubt of the truth of their content or whether it might merely be the child's fancy and imagination. That was within his province as trier of the fact. "* * * an unsworn statement *is evidence of what it asserts* [italics ours], when it is so connected with the transaction as a whole that the utterance may fairly be regarded as an expression of feeling forced from the declarant by the pressure of the circumstances under which it was made, rather than the narrative result of thought."[9]

3. The form of the third specified error is confusing, but the confusion may result from the language of many authorities. In reality the term *corpus delicti* means the actual commission of a crime by someone. The defendant's connection with the crime is not a part of the *corpus delicti,* although his agency must be shown in order to proceed further and to convict him.[10]

But considering the specified error as raising the ques-

---

[9] 32 C. J. S. p. 47 (citing cases).

[10] See Underhill's Crim. Ev. [4th ed.] § 35; 9 Words & Phrases, pp. 749, 751.

tion of the alleged insufficiency of the evidence to justify a conviction both as to the fact that an indecent assault had been perpetrated and, secondly, that the defendant was the perpetrator, we hold that the evidence of the declarations of the child, coupled with the evidence of the equivocal nature of the established companionship of the defendant with the child, his conduct on being accused, his later denial of acquaintanceship with mother and child and his discredited attempt at an alibi, presented to the trier of the fact sufficient evidence which, if believed beyond a reasonable doubt against the defendant, would justify a conviction and sentence. It has long been the established rule in this jurisdiction that it is not a province of the appellate court to reconcile the evidence in any case or to disturb the verdict and judgment unless the same be clearly contrary to the evidence.[11] "In civil as well as criminal cases, the Court will disturb a verdict for insufficiency of evidence only in very clear and strong cases."[12] Hence, a conviction for indecent assault by a trial court, jury waived, will not be reversed under section 9564, Revised Laws of Hawaii 1945, on a claim of insufficiency of evidence as to (1) the *corpus delicti* or (2) identity of the defendant as the perpetrator, unless so palpably unsupported in the evidence as to demonstrate that the defendant was deprived of substantial rights. In the instant case this court finds no reason to disturb the findings, judgment and sentence of the trial court.

Judgment affirmed.

*J. M. Morita* for plaintiff in error.

*C. M. Hite,* Public Prosecutor, and *Moon Chan,* Assistant Public Prosecutor (on brief only), for the Territory.

---

[11] Rep. Haw. v. Yamane, 12 Haw. 189, 222, 223.

[12] Rex v. Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee, 3 Haw. 90, 100.