JOHN MICHAEL SHEA, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant, and REBECCA BUENTELLO, HAWAIIAN ELECTRIC COMPANY, JOHN DOES I-X, and JOHN DOE CORPORATIONS I-X, Defendants

NO. 9195

(CIVIL NO. 64492)

JANUARY 8, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The City and County of Honolulu appeals from a judgment in a personal injury action brought by John Michael Shea against a host of defendants, including John Does I to X and John Doe Corporations I to X who remain unidentified. The dispositive question is whether a statement attributed by the plaintiff to an unknown out-of-court declarant should have been admitted as evidence. Concluding it should not have been, we set aside the judgment and remand the case for retrial.

I.

A.

Shea was injured on May 6, 1979 when his motorcycle veered from an Ewa-bound lane of Kalanianaole Highway and struck the curb of the highway's medial strip, causing him to be flung from the motorcycle. Earlier that day, Rebecca Buentello drove her automobile off the same stretch of highway and struck several utility poles. The poles toppled onto the Kokohead-bound traffic lanes and rendered those lanes impassable at that point. When the police arrived at the accident scene, they restored the flow of traffic in the Kokohead direction by temporarily directing the traffic, with the aid of flares, into the Ewa-bound lane closest to the medial strip, past the fallen poles, and back into the Kokohead lanes. A Hawaiian Electric Company (HECO) construction crew was on the scene shortly, but could not complete the task of repairing the substantial damage until twelve hours later. Meanwhile, the Kokohead-bound traffic continued to flow past the scene in the Ewa lane, guided only by traffic cones placed on the highway since the police officers departed after completing their investigation and setting the cones.

Thus when Shea and his passenger, who were headed in the Ewa direction, approached the scene on his motorcycle some eight hours after the earlier accident involving Ms. Buentello, one of the Ewa-bound lanes was still being utilized to facilitate the movement of traffic in the opposite direction. This caused congestion in the remaining lanes and an uneven flow of vehicles travelling in the Ewa direction. Shea ascribed the mishap in which his motorcycle swerved off the highway to erratic vehicular movement. In the motor vehicle accident report submitted by the investigating police officer, the account of the accident given by Shea at the scene is recorded in part as follows:

He recalles [sic] traveling at about 30 mph when he suddenly saw traffic ahead abruptly slowing. He jammed his brakes and was successful in evading collision with a car ahead, but he lost control of the motorcycle, and struck the raised medial curb at the center of the highway. Both he and his passenger fell to the roadway with the motorcycle.

The report indicates the passenger, who was then Shea's wife, also made a statement to the officer, who paraphrased it in these terms:

Paula Shea related that she was riding with her husband on their motorcycle, when she suddenly found herself lying on the ground. She did not see traffic circumstances before the mva.

The police record of the accident further denotes the "area [was] checked for witnesses; none found."

## B.

Shea filed his suit for damages on February 12, 1981, naming Rebecca Buentello, HECO, the City, "John Does I-X, and John Doe Corporations I-X" as defendants. He alleged HECO caused the accident by "block[ing] and congest[ing] traffic on Kalanianaole Highway for an unduly long period of time and in a negligent and careless manner." Ms. Buentello, he averred, was also responsible for the accident since it was her reckless or negligent conduct that caused the utility poles "to fall and block the highway." The City's dereliction in not having police officers directing traffic at the scene, its action in "re-routing traffic," and its failure to adequately apprise drivers "of the traffic congestion and blockage," Shea claimed, rendered it liable for his damages. John Doe I, "an indivi-

dual whose identity is unknown," Shea alleged, was responsible for the mishap because he was the person who "negligently, recklessly, and carelessly move[d] his vehicle from the lane in which he was travelling . . . and . . . force[d] Plaintiff who was directly to his left to drive his motorcycle over the median strip."

HECO and the City were served and responded promptly. HECO denied the averments of negligence on its part, alleged Shea was at fault instead, and also alleged Rebecca Buentello was the cause of any harm that befell Shea. The City likewise disclaimed any responsibility for the harm, claimed Shea was negligent, and further averred that if someone other than Shea was at fault it was HECO or Ms. Buentello. HECO answered the cross-claim with allegations that the City should be held liable if Shea and Ms. Buentello were not.

The plaintiff was unable to effect prompt service on Rebecca Buentello, and she was finally given notice of the suit by publication. When the published notice engendered no response, default was entered. However, she moved successfully thereafter to have the order of default vacated and submitted her responsive pleadings to the complaint and the cross-claims filed by HECO and the City, denying she was responsible for the injury and damages sustained by Shea.

## C.

The City was the sole defendant at trial, Rebecca Buentello having moved successfully for summary judgment in her favor and HECO having settled Shea's claim against it. At the very outset, the City sought to exclude the out-of-court declaration in question. Apprised through pre-trial discovery that Shea was likely to testify about a statement supposedly made by an unknown person from which negligence could possibly be deflected from him and imputed to the unidentified declarant, the City sought to prevent such testimony. Its motion in limine prayed that Shea be prohibited "from bringing forth at trial . . . any reference to, or recitation of any statements made by an unidentified and unknown individual who allegedly swerved into Plaintiff's path, allegedly causing Plaintiff to lose control of his motorcycle prior to the accident involved in this case, inasmuch as such statements are hearsay." The trial

judge denied the motion, indicating that rulings on admissibility of evidence would be rendered in due course of trial.

As the City anticipated, Shea offered evidence that he heard an unidentified person say "I'm sorry, I didn't see him" to another unidentified person in a blue uniform, perhaps a policeman or a fireman, at the scene of the mishap. Though the City voiced strong objections to a reiteration of the cryptic out-of-court declaration, it was to no avail. The judge's ruling was:

> Court's going to allow it with the explanation that it be not for the truth of the contents but the fact that the statement was made. This was done close enough to the time of the incident to be considered essentially as an excited utterance.

The case was submitted to the jury at the close of evidence upon special interrogatories. The trier of fact found, *inter alia,* that the City was negligent, the negligence was a proximate cause of the mishap, and fifteen percent of the combined negligence causing the accident should be attributed to the City. The jury also decided Shea was negligent but only to the extent of ten percent of the total negligence that brought him harm.

The special verdict form given to the jury included questions formulated to determine whether HECO and John Doe I were negligent too, whether the negligence of each could be deemed a proximate cause of Shea's mishap, and what portion of the combined negligence of the negligent parties should be assigned to the nominal defendant whose absence from trial was due to a prior settlement and to the unidentified defendant who was never a party.[1] HECO's share of the fault was fixed by the jury at twenty percent, and John Doe I was assigned fifty-five percent of the fault.

The jury further found Shea suffered damages in the sum of $170,422.79, or $20,422.79 in special damages and $150,000.00 in general damages. In accord with the verdict returned by the jury, the trial court entered judgment "in favor of the Plaintiff and against Defendants CITY AND COUNTY OF HONOLULU and JOHN DOE I, jointly and severally, in the amount of"

---

[1] In light of our conclusion that the trial court erroneously permitted the jury to hear inadmissible hearsay, we do not reach the issue related to the inclusion of interrogatories covering the negligence of John Doe I in the special verdict form.

$119,295.95.[2] The City perfected a timely appeal from the judgment, and the primary issue presented for resolution is whether the unknown declarant's statement was inadmissible hearsay.

## II.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hawaii Rules of Evidence (Haw. R. Evid.) 801(3). It is inadmissible at trial, unless it qualifies as an exception to the rule against hearsay. *Kekua v. Kaiser Foundation Hospital,* 61 Haw. 208, 217, 601 P.2d 364, 370 (1979). Here, an out-of-court declaration was admitted "not for the truth of the contents" and "as an excited utterance." The ruling cannot be justified on either ground.

The plaintiff was allowed to recite the extrajudicial utterance at trial over the City's objections "with the explanation that it be not for the truth of the contents but [for] the fact that the statement was made." True, "[i]f the statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay." *McCormick on Evidence* § 249 (E. Cleary ed. 3d ed. 1984). Yet what was offered by the plaintiff was definitely an assertion and meant to demonstrate the lack of due care on the unknown declarant's part; for counsel maintains "[t]he statement of John Doe I explains in part how this accident occurred." The trial judge clearly misjudged the import of the statement and why it was tendered for jury consideration.

His allowance of Shea's testimony on the basis that the out-of-court declarant's statement was "essentially . . . an excited utterance," likewise, is not well-founded. "[T]he credibility of testimony depends [upon] the perception, memory, and narration of the witness." *Id.* § 245. "In order to . . . expose inaccuracies . . . with respect to any of the foregoing factors, the Anglo-American tradition evolved three conditions under which witnesses ordinarily will be

---

[2] Since we conclude prejudicial error was committed in admitting the out-of-court statement of an unknown person, we do not find it necessary to discuss the obvious error committed by the trial court in entering judgment against a defendant who was never a party.

required to testify: oath, personal presence at the trial, and cross-examination. The rule against hearsay is designed to insure compliance with these ideal conditions." *Id.* (footnote omitted). Still, the rule is not applied without exception, and an out-of-court declaration is admissible where the " 'circumstantial guarantees of trustworthiness' justif[y] departure from the general rule excluding hearsay." *Id.* § 253 (quoting 5 Wigmore, *Evidence* § 1422 (Chadbourn rev. 1974)).

An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Haw. R. Evid. 803(b)(2). "The crucial element that buttresses the reliability of such [statements and renders them admissible] is . . . spontaneity." *State v. Messamore,* 2 Haw. App. 643, 649, 639 P.2d 413, 418 (1982). "[T]o be admitted . . . , the statements must be reasonably contemporaneous with the event to which they relate, i. e., they must be such as to have been proximately caused by the exciting influence of the event without opportunity for deliberation or influence." *Territory v. Lewis,* 39 Haw. 635, 640 (1953) (citing *Territory v. Kinoshita,* 38 Haw. 335 (1949)); *see also Anduha v. County of Maui,* 30 Haw. 44, 51 (1927); *State v. Messamore,* 2 Haw. App. at 649-50, 639 P.2d at 418.

But in this case the circumstances did not establish a probability of trustworthiness justifying a departure from the rule. Because the "element that buttresses the reliability of [an 'excited utterance'] is . . . spontaneity[,] . . . the time span between the event and the making of the statement [must be] short — very short." *State v. Messamore,* 2 Haw. App. at 649, 639 P.2d at 418. The interval between event and utterance here could not be said to have been very short; admittedly it was in the neighborhood of ten minutes. And the record adds nothing from which it can reasonably be inferred that the declarant's words were " 'generated by an excited feeling which extend[ed] without let or breakdown from the moment of the event they [purportedly] illustrat[ed].' " *Territory v. Kinoshita,* 38 Haw. at 342 (quoting 6 Wigmore, *Evidence* § 1749 (3d ed.)).

Where the general policy of requiring that testimony be given by witnesses in open court, under oath, and subject to cross-examination is not to be observed, there should be a clear showing that the extrajudicial statement was "made under circumstances

calculated to give some special trustworthiness to it." 6 Wigmore, *Evidence* § 1749 (Chadbourn rev. 1976). We do not see that the hearsay offered by the plaintiff as evidence of someone else's negligence was uttered under such circumstances, and the trial judge abused his discretion in allowing the testimony.

### III.

Shea, however, maintains there was no abuse of discretion; he argues the out-of-court declaration, if not an "excited utterance," was nevertheless admissible on other grounds. It was, he claims, an admission by a party opponent or a statement against interest. Granted, "[w]here the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action." *Riley Co. v. Commissioner,* 311 U.S. 55, 59 (1940); *see also State v. Mueller,* 66 Haw. 616, 630, 671 P.2d 1351, 1360 (1983); *Agsalud v. Lee,* 66 Haw. 425, 430, 664 P.2d 734, 738 (1983). But what was offered as evidence was not the admission of a party opponent, and the indicia of trustworthiness that might have rendered it admissible are not apparent in the record.

### A.

"The extrajudicial statements of a party-opponent, when offered against the same, are universally deemed admissible at trial as substantive evidence of the fact or facts stated." *Kekua v. Kaiser Foundation Hospital,* 61 Haw. at 217, 601 P.2d at 371 (footnote omitted).[3] "[P]arty admissions, unlike statements against interest, need not have been against the declarant's interest when made, need not be based on the declarant's personal knowledge, may be in the form of an opinion, and are admissible at trial regardless of whether the declarant is unavailable." *Id.* at 216 n.3, 601 P.2d at

---

[3] Or as put by the author of a highly regarded treatise,

*anything said by the party-opponent may be used against him as an admission,* provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony. (This proviso never needs to be enforced, because no party offers thus his opponent's statement unless it does appear to be inconsistent.)

4 Wigmore, *Evidence* § 1048 (Chadbourn rev. 1972) (emphasis in original).

370 n.3 (citing 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)[01] (1977)); *see also* Haw. R. Evid. 803(a)(1).[4] Their free admissibility "is grounded upon the adversary theory of litigation rather than any circumstantial indicia of reliability. E. Morgan, Basic Problems of Evidence 265-66 (4th ed. 1963)." *Kekua v. Kaiser Foundation Hospital,* 61 Haw. at 217 n.4, 601 P.2d at 371 n.4.

We would not quarrel with the proposition that "it seems essentially fair to allow the use against a party of his previous statements relevant to the subject matter of the current litigation." Bowman, *The Hawaii Rules of Evidence,* 2 U. Hawaii L. Rev. 431, 468 (1980-81). "A party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath." E. Morgan, *supra,* at 266. And if his earlier statement is not repeated accurately, "he now as opponent has the full opportunity to put himself on the stand and explain his former assertion." 4 Wigmore, *Evidence* § 1048 (Chadbourn rev. 1972). But what was repeated to the jury here was not the former assertion of a party opponent qualifying as an admission; it was the earlier assertion of an unidentified individual.

### B.

Shea, however, argues the unknown declarant's remark was still admissible as a statement against interest pursuant to Haw. R. Evid. 804(b)(3),[5] if not as an admission. Inasmuch as the declarant's

---

[4] Haw. R. Evid. 803(a)(1) reads:

Hearsay exceptions; availability of declarant immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(a) Admissions.

(1) Admission by party-opponent. A statement that is offered against a party and is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth[.]

[5] Haw. R. Evid. 804(b)(3) reads:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) Statement against interest. A statement which was at the time of its

unavailability is not seriously disputed by the City, the admissibility of his declaration would not be open to serious challenge if it qualifies as a statement against interest. Haw. R. Evid. 804(b)(3) renders admissible "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true." In other words, an out-of-court declaration may be admitted if the "fact [asserted is] so palpably against the declarant's interest that he must have realized it to be so when he made the statement." E. Morgan, *supra,* at 291 (citing 5 Wigmore, *Evidence* §§ 1461, 1462 (3d ed. 1940)).

But the statement in question does not meet the test for reliability embodied in the relevant rule of evidence. To begin, we do not know who the declarant was and to whom he said, "I'm sorry, I didn't see him." Was he a bystander? Or was he the driver of the vehicle behind the plaintiff? He could have been the driver Shea claims cut in front of him, yet it is as likely he was not. What was the fact asserted? Was it that he did not witness the accident? Or was it that the declarant did not see Shea? Under these uncertain circumstances, we could hardly conclude the assertion was so palpably against the declarant's interest that there was a " 'circumstantial [guarantee] of trustworthiness' justi[fying a] departure from the general rule excluding hearsay." *McCormick on Evidence, supra,* § 253 (footnote omitted).

Since Shea offered "[t]he statement of John Doe I [to explain] in part how [the] accident occurred" and the jury found John Doe I's negligence contributed in large measure to the accident, we cannot say the trial judge's error was harmless. The judgment is vacated, and the case is remanded for retrial.

---

making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

510

*Francis M. Nakamoto,* Deputy Corporation Counsel, for appellant.

*Wayne D. Parsons* for appellee.