**In the Interest of JOHN DOE**, born on November 23, 1970, Juvenile–
Appellant

NO. 12357

(FC–J NO. 87–48156)

AUGUST 23, 1988

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Juvenile–Appellant John Doe appeals from a decree of the Family Court of the First Circuit adjudging him to be a law violator within the purview of Hawaii Revised Statutes (HRS) § 571–11(1) (1985).[1] The decree, he urges, should be vacated because the family court erred in the course of the hearing on the petition alleging he came within the purview of HRS § 571–11(1) because he committed an act which would have been a crime under HRS § 707–736(1)(b) (1985),[2] Sexual Abuse in the First Degree, if committed by an adult. Concluding from a review of the record that the court erred in allowing the alleged victim's teacher to relate what the child told her and to give her opinion on the veracity of the child's statements, we set aside the decree and remand the case for a new hearing.

I.

The petition filed in the family court by a police officer alleged that the juvenile–appellant committed Sexual Abuse in the First Degree

---

[1] HRS § 571–11(1) (1985) reads:

Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance. Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.

[2] Prior to its amendment in 1986, HRS § 707–736(1)(b) (1985) read:

**Sexual abuse in the first degree.** (1) A person commits the offense of sexual abuse in the first degree if:

. . . .

(b) He intentionally has sexual contact with another person who is less than fourteen years old or causes such a person to have sexual contact with him.

between August 1 and August 4, 1986 by intentionally having sexual contact with a four–year–old female child while a weekend guest of her stepbrother in her parents' home. When the petition was heard, the child could not be qualified as a witness despite the prosecuting attorney's strenuous efforts to establish competency. Thus, he relied on the testimony of the child's mother and preschool teacher to sustain the allegations of the petition.

The mother of the child testified that on Monday morning, August 4, 1985, the child asked her "why [the juvenile–appellant was] doing exercises on me[?]," indicating through her motions that what the juvenile–appellant had done were "push–ups." The mother understandably was alarmed, but felt it would be best not to have the child think "something horrible had happened[.]" She therefore asked no pointed questions about what happened. She then took the child to a pediatrician, who examined her but found no physical signs of trauma. After the examination, the mother took the child to her regular preschool class. Sticking to the child's normal routine, the mother felt, was the best course under the circumstances. She advised the preschool principal that the child might have been abused sexually during the weekend. The principal in turn apprised the child's teacher of the mother's fears and concerns.

The child had been in the teacher's class for approximately three months so she knew the child quite well. The teacher, who had been teaching for about six years, had majored in early education and had taken a course on child abuse in college. Her testimony at the hearing included an account of what the child had related in response to a general query directed to a group of eight preschoolers about what they had done over the weekend. The teacher was allowed, over the objections of juvenile–appellant's counsel, to repeat the purported responses on the ground that they constituted spontaneous statements falling within "the 'excited utterance' exception to the hearsay rule[.]" Among these statements was one that the juvenile–appellant had asked the child to tickle his penis. The teacher was also asked, again over counsel's objections, for "an opinion as to the truthfulness of what this child had told you[.]" In her opinion, the child "wasn't lying[]" because "[i]t's not normal for a child to speak that way or to make up or imagine . . . a situation."

The juvenile–appellant, however, denied even being in the child's room. He claimed that he had to use the bathroom adjoining her room on Saturday night, had accidentally opened the door to her room, and could have startled the child in doing so. Though he admitted playing with her and doing exercises in her presence, he denied asking the child to tickle his penis.

After reviewing the conflicting evidence, the family court entered a decree finding the juvenile–appellant was a law violator, placed him on probation, and ordered that he be evaluated psychologically, that he cooperate and participate in any psychiatric program or therapy arranged for him, and that he be detained for two days at the detention home on hard labor. The juvenile–appellant filed a Motion for Reconsideration or in the Alternative for Findings of Fact and Conclusions of Law. The court denied reconsideration, filing its findings and conclusions instead. A timely appeal from the adjudication of delinquency was perfected thereafter.

## II.

The juvenile–appellant avers on appeal that the family court abused its discretion in admitting hearsay testimony, the admission of such testimony breached his right to confront and cross–examine his accuser, and the family court abused its discretion too in permitting the preschool teacher to give her opinion on the truthfulness of the child's out–of–court statements. We begin our analysis of these points of alleged error by reviewing the relevant teachings of the Supreme Court.

## A.

The Court has said a hearing to determine delinquency need not "'conform with all of the requirements of a criminal trial[;]'" but it has held the procedures employed "'must measure up to the essentials of due process and fair treatment.'" *In re Gault*, 387 U.S. 1, 30 (1967) (quoting *Kent v. United States*, 383 U.S. 541, 562 (1966)) (footnote omitted). For one thing, "absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross–examination in accordance with our law and constitutional requirements." *In re Gault*, 387 U.S. at 57.

If one were to apply *Gault* literally, it would require, on objection, the exclusion of all hearsay from a delinquency hearing. "In the hearsay situation, two 'witnesses' are involved. The first complies with all three of the ideal conditions for the giving of testimony[.]" E.W. Cleary, *McCormick on Evidence* § 245 (3d ed. 1984). He is present at trial, under oath, and subject to cross–examination. *Id.* His testimony, however, "consists of reporting what the second 'witness' said. The second 'witness' is the out–of–court declarant; his statement was not given in compliance with the ideal conditions[.]" *Id.* Though the statement "contains . . . information that is of concern in the case[,]" *id.*, its evidentiary value rests "upon the credibility of the declarant without the assurances of oath, presence, or cross–examination[.]" E.W. Cleary, *supra*, § 246.

But neither the rule against hearsay, "that most characteristic rule of the Anglo–American Law of Evidence[,]" 5 J. Wigmore, *Evidence* § 1364 (Chadbourn rev. ed. 1974), nor "[t]he Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403–405 (1965); *Davis v. Alaska*, 415 U.S. 308, 315 (1974)," operates to bar all hearsay from trial. *Ohio v. Roberts*, 448 U.S. 56, 62 (1980). "The basic rule against hearsay, of course, is riddled with exceptions developed over three centuries." *Id.* (citations and footnote omitted). And the Court "has recognized that competing interests, if 'closely examined,' *Chambers v. Mississippi*, 410 U.S. [284,] 295 [(1973)], may warrant dispensing with confrontation at trial." *Id.* at 64 (citation omitted).

The relevant opinions of the Supreme Court emphasize that the clause "reflects a preference for face–to–face confrontation . . . and . . . 'a primary interest secured [thereby to the defendant] is the right of cross–examination.' *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)." *Id.* at 63 (footnotes omitted). At the same time, the Court acknowledges that "every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." *Id.* at 64 (citations omitted). The Court's approach to the problem of accommodating the competing interests "reflects the truism that 'hearsay rules and the . . . Clause are generally designed to protect similar values,' *California v. Green*, 399 U.S. [149,] 155, and 'stem from the same roots,' *Dutton v. Evans*, 400 U.S. 74, 86 (1970). It also responds to the need for certainty in the workaday world of con-

ducting criminal trials." *Id.* at 66. The circumstances, which in the Court's view, warrant dispensing with confrontation at trial are outlined as follows:

> In sum, when a hearsay declarant is not present for cross–examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* (footnote omitted). In other words, "the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder v. Massachusetts*, 291 U.S. [97,] 107 [(1934)]." *Id.* at 65.

### B.

The hearsay testimony in question was admitted because the family court found it fell within "the 'excited utterance' exception to the hearsay rule[.]" Our law of evidence defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[]" and renders the utterance admissible at trial though it may be hearsay. Haw. R. Evid. 803(b)(2). The pertinent rule codifies "an exception to the hearsay rule . . . [that] is universally recognized." E.W. Cleary, *supra*, § 297. The evidence of the alleged sexual abuse furnished by the teacher, then, was admissible under the Hawaii Rules of Evidence and the Confrontation Clause would have countenanced its admission if the out–of–court declarant's statement constituted an "excited utterance."[3] But we do not believe it did.

"The crucial element that buttresses the reliability of such [out–of–court] declarations is their spontaneity[.]" *State v. Messamore*, 2 Haw. App. 643, 649, 639 P.2d 413, 418 (1982). "'[T]o be admitted [they] must

---

[3] Since the child could not be qualified as a witness despite the strenuous efforts of the prosecuting attorney, she was, for all intents and purposes, unavailable.

be reasonably contemporaneous with the event to which they relate, i.e., they must be such as to have been proximately caused by the exciting influence of the event without opportunity for deliberation or [other] influence.'" *Shea v. City & County*, 67 Haw. 499, 506, 692 P.2d 1158, 1164 (1985) (quoting *Territory v. Lewis*, 39 Haw. 635, 640 (1953)) (citations omitted). Essentially, the time span between the event and the declaration must be short. *State v. Messamore*, 2 Haw. App. at 649, 639 P.2d at 418.

Here, the teacher was allowed to relate what the child said about the event three hours after she first told her mother about it. By the time the teacher asked the child what she did over the weekend, it would have been nearly half a day after the event at the least. We would be hard put to say the child's statement was reasonably contemporaneous with the event even if we assumed the event occurred shortly before she spoke to her mother. Hence, we conclude the admission of the child's account of the alleged sexual abuse, as related by the teacher, was error.

## III.

The admissibility of opinion evidence on the veracity of a witness' statement once again is brought into focus by the juvenile–appellant's remaining point of alleged error, that "[t]he trial court abused its discretion in admitting [the teacher's] opinion as to the truthfulness of [the child's] statements[.]" The juvenile–appellant argues the teacher's opinion was "not lay opinion permissible under [Haw R. Evid.] 701 . . ., was not proper expert opinion under [Haw. R. Evid.] 702 and 703 . . . and the standards set forth in *State v. Kim* . . ., and [constituted] improper bolstering of credibility without impeachment in violation of [Haw. R. Evid.] 608(a)(2) . . . ."

## A.

We begin our analysis with a brief review of *State v. Kim*, 64 Haw. 598, 645 P.2d 1330 (1982), where the defendant was accused of having sexual intercourse with his thirteen–year–old stepdaughter. As in the case at bar, the putative victim was the sole witness to the alleged offense. When the case was tried, defense counsel succeeded in casting some

doubt on her credibility through cross–examination. The State then offered the testimony of the psychiatrist who examined her shortly after the offense was reported to support her account of the event. The defendant's objection to the State's offer of proof was overruled on the ground that the cross–examination had put the witness' credibility sufficiently in question to render the proffered evidence admissible. The psychiatrist was qualified as an expert, and he gave testimony which culminated in a statement that he found the witness' account of the sexual encounter with her stepfather "believable."

When the case reached us on the defendant's appeal, we were, of course, troubled by the admission of the psychiatrist's testimony. Yet we were "reluctant to categorically preclude all such testimony[ because] we [felt] . . . that under certain circumstances expert psychiatric testimony may reveal . . . characteristics or conditions of the witness which may assist the [trier of fact in] assess[ing] . . . credibility." *Id.* at 602, 645 P.2d at 1334 (citations omitted). But as we said recently in *State v. Castro*, 69 Haw. ____, 756 P.2d 1033 (1988), "[i]f [*State v. Kim*] is perceived as precedent for the allowance generally of expert testimony on credibility, the perception is erroneous." *Id.* at ____, 756 P.2d at 1044 (footnote omitted). And obviously, *Kim* does not stand for the proposition that lay testimony on credibility is generally allowed.

B.

Unlike the situations in *State v. Kim* and *State v. Castro*, the opinion evidence in this case was not adduced after the witness' credibility was attacked on cross–examination. The testimony that the child "wasn't lying[]" was elicited during the direct examination of a witness for the prosecution who earlier had reported what the out–of–court declarant purportedly said; it was an attempt to bolster hearsay with lay opinion on its veracity. The prosecution has not directed us to case law supporting the admission of such evidence, and our research has uncovered no case where its introduction was approved. We conclude the family court erred when it admitted the sustaining evidence in the form of lay opinion.

To begin with, "[o]ne general principle, operative under both case law and the Federal Rules of Evidence, [from which the Hawaii Rules of Evidence are derived,] is that in the absence of an attack upon credibility

no . . . evidence [supporting the witness' credibility] is allowed." E.W. Cleary, *supra*, § 49 (footnote omitted). The opinions of this court and our rules of evidence reflect this general principle. *See Brown v. Walker*, 24 Haw. 285, 291–92 (1918); Haw. R. Evid. 608(a). Here, there was no prior attack upon credibility—we could hardly deem an objection to the out–of–court declarant's statements as inadmissible hearsay an attack upon her credibility.

Furthermore, the prosecution does not even attempt to justify the admission of the opinion testimony as permissible under the rules of evidence. The teacher's "repeated recitation in the State's case–in–chief, that she believed the child," it argues in its answering brief, "was an already determined proposition which could hardly serve to bolster the credibility of any of the witnesses." But we cannot so lightly write off the family court's error. For the procedures followed in the adjudication of a minor as a law violator "'must measure up to the essentials of due process and fair treatment.'" *In re Gault*, 387 U.S. at 30 (quoting *Kent v. United States*, 383 U.S. at 562).

The decree of the family court is vacated, and the case is remanded for a new hearing.

*Susan Barr* (*William C. Bagasol* with her on the opening brief), Deputy Public Defenders, for juvenile–appellant.

*Lila B. LeDuc*, Deputy Prosecuting Attorney, for plaintiff–appellee.