**STATE OF HAWAII**, Plaintiff–Appellee, v. **FELOMINO BATANGAN**, Defendant–Appellant

NO. 14097

(CR. NO. 87–0884)

SEPTEMBER 27, 1990

LUM, C.J., PADGETT, HAYASHI,
WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY WAKATSUKI, J.

Felomino Batangan (Defendant) was accused of having sexual contact with his daughter (Complainant). Complainant alleged that when she was 6 or 7 years old, on four or five occasions, Defendant performed sexual acts on her. Complainant could not provide any specific dates or reference points in time. Nor were the acts described specific as to one incident or another. There was no evidence of physical injury and no third–party witnesses to these incidents.

Complainant did not report these incidents until several months after the occurrences. She first reported to school authorities that Defendant had physically abused her. When no injuries were found, she admitted that she had lied about the physical abuse, but instead accused Defendant of sexually abusing her. Complainant subsequently recanted her allegations of sexual abuse. At trial, however, Complainant testified that she had been sexually abused by Defendant.

Defendant was indicted on one count of second degree rape and one count of first degree sexual abuse. At the first trial, Defendant was acquitted of the rape charge, and a mistrial (due to a hung jury) was declared on the sexual abuse charge. The State proceeded to retry Defendant on the sex abuse count.

At the second trial, the State presented Dr. John Bond as an expert witness in the field of clinical psychology with a

subspecialty in the treatment of sexually abused children. Dr. Bond had evaluated Complainant on one occasion three weeks prior to the second trial.

Dr. Bond testified regarding his evaluation of Complainant (her personality, intelligence, behavior) and what Complainant had related to him regarding the incidents of sexual abuse. There was also some testimony about behavior of child sex abuse victims in general. Finally, Dr. Bond testified as to how he evaluates whether a child is telling the truth about being sexually abused. He then implicitly testified that Complainant was believable and that she had been abused by Defendant.

Defendant objected to the admission of Dr. Bond's testimony. The trial court, however, determined that such testimony was admissible under *State v. Kim*, 64 Haw. 598, 645 P.2d 1330 (1982).

Defendant was convicted of first degree sexual abuse. He appeals on the ground that the trial court committed error in admitting Dr. Bond's testimony. We agree.

I.

We recognize that sexual abuse of children is "detestable and society demands prosecution of these abusers." *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986). Yet these cases are difficult to prosecute because of the young age of many of the victims and the absence of eyewitnesses. *Id.* at 97; *Townsend v. State*, 103 Nev. 113, 117, 734 P.2d 705, 708 (1987); *Wheat v. State*, 527 A.2d 269, 275 (Del. Super. Ct. 1987). "Given the egregious nature of child molestation, we are tempted to stretch the rules of evidence to their utmost." *State v. Moran*, 151 Ariz. 378, 380, 728 P.2d 248, 250 (1986) (citations and internal ellipses omitted). However, the charge of sexual abuse by itself imposes an heinous stigma on the

accused and a conviction results in a serious penalty. *Wheat*, 527 A.2d at 275; *Myers*, 382 N.W.2d at 97; *see generally* § 707–730 through § 707–751, Hawaii Revised Statutes (HRS).

Our rules of evidence should therefore be interpreted in light of society's interest as well as defendant's right to a fair trial. *Wheat*, 527 A.2d at 275; *Myers*, 382 N.W.2d at 97.

Rule 702, Hawaii Rules of Evidence (HRE) governs the admission of expert testimony at a trial:

> **Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Expert testimony assists the trier of fact by providing "a resource for ascertaining truth in relevant areas outside the ken of ordinary laity." *Townsend*, 103 Nev. at 117, 734 P.2d at 708. Specialized knowledge which is the proper subject of expert testimony is knowledge not possessed by the average trier of fact who lacks the expert's skill, experience, training, or education. *Wheat*, 527 A.2d at 272. Although an expert's testimony on matters within the competence of the jurors may be relevant and helpful, "the possibility that the jury may be unduly influenced by the expert's opinion would mitigate against admission." *Kim*, 64 Haw. at 607, 645 P.2d at 1337. Scientific and expert testimony, with their "aura of special reliability and trustworthiness," *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973), courts the danger that the triers of fact will "abdicate [their] role of critical assessment," *State v. Brown*, 297 Or. 404, 439, 687 P.2d 751, 773 (1984), and "surrender [] their own common sense in weighing testimony." *United States v. Azure*, 801 F.2d 336, 341 (8th Cir. 1986).

The common experience of a jury, in most cases, provides a sufficient basis for assessment of a witness' credibility. Thus,

expert testimony on a witness' credibility is inappropriate. *Kim*, 64 Haw. at 607, 645 P.2d at 1337. However, sexual abuse of children "is a particularly mysterious phenomenon," *State v. Castro*, 69 Haw. 633, 648, 756 P.2d 1033, 1044 (1988), "and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse." *State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984).

> While jurors may be capable of personalizing the emotions of victims of physical assault generally, and of assessing witness credibility accordingly, tensions unique to trauma experienced by a child sexually abused by a family member have remained largely unknown to the public . . . . [T]he routine indicia of witness credibility—consistency, willingness to aid the prosecution, straight forward rendition of the facts—may, for good reason be lacking. As a result jurors may impose standards of normalcy on child victim/witnesses who consistently respond in distinctly abnormal fashion.

*Moran*, 151 Ariz. at 381, 728 P.2d at 251 (1986) (quoting *State v. Middleton*, 294 Or. 427, 440, 657 P.2d 1215, 1222 (1983) (Roberts, J., concurring)).

Child victims of sexual abuse have exhibited some patterns of behavior which are seemingly inconsistent with behavioral norms of other victims of assault. Two such types of behavior are delayed reporting of the offenses and recantation of allegations of abuse. Normally, such behavior would be attributed to inaccuracy or prevarication. *People v. Hampton*, 746 P.2d 947, 952 (Colo. 1987); *Wheat*, 527 A.2d at 273; *Allison v. State*, 179 Ga. App. 303, 308, 346 S.E.2d 380, 384–85 (1986); *Myers*, 359 N.W.2d 604, 610 (Minn. 1984); *State v. Middleton*, 294 Or. at 440, 657 P.2d at 1219–20 (1983) (Roberts, J., concurring). In these situations it is helpful for the jury to know that many child victims of sexual abuse behave in the same manner. Expert testimony "[e]xposing jurors

to the unique interpersonal dynamics involved in prosecutions for intrafamily child sexual abuse," *Wheat*, 527 A.2d at 273, "may play a particularly useful role by disabusing the jury of some widely held misconceptions . . . so that it may evaluate the evidence free of the constraints of popular myths." *People v. Gray*, 187 Cal. App. 3d 213, 218, 231 Cal. Rptr. 658, 660–61 (1986) (citations and internal quotation marks omitted).

We recognize that even this type of expert testimony carries the potential of bolstering the credibility of one witness and conversely refuting the credibility of another. Much expert testimony on any subject will tend to do this. Such testimony, by itself, does not render the evidence inadmissible. *Wheat*, 527 A.2d at 274; *Townsend*, 103 Nev. at 118, 734 P.2d at 709; *Myers*, 359 N.W.2d at 609; *Middleton*, 294 Or. at 435, 657 P.2d at 1219. The pertinent consideration is whether the expert testimony will assist the jury without unduly prejudicing the defendant.

Thus, while expert testimony explaining "seemingly bizarre" behavior of child sex abuse victims is helpful to the jury and should be admitted, conclusory opinions that abuse did occur and that the child victim's report of abuse is truthful and believable is of no assistance to the jury, and therefore, should not be admitted. Such testimony is precluded by HRE Rule 702.

> Once the jury has learned the victim's behavior from the evidence and has heard experts explain why sexual abuse may cause delayed reporting, inconsistency, or recantation, we do not believe the jury needs an expert to explain that the victim's behavior is consistent or inconsistent with the crime having occurred.

*Moran*, 151 Ariz. at 385, 728 P.2d at 255. The jury is fully capable, on its own, of making the connections to the facts of the particular case before them and drawing inferences and conclusions therefrom.

## II.

We are cognizant that HRE Rule 704 permits "[t]estimony in the form of opinion or inference" even though "it embraces an ultimate issue to be decided by the trier of fact." But Rule 704 does not allow "the admission of opinions which would merely tell the jury what result to reach[.]" Commentary to HRE Rule 704.

As in most child sexual abuse cases, where "the only evidence consists of the victim's accusation and the defendant's denial, expert testimony on the question of who to believe is nothing more than advice to jurors on how to decide the case." *Moran*, 151 Ariz. at 383, 728 P.2d at 253. The expert's use of words such as "truthful" and "believable" is not talismanic. But where the effect of the expert's opinion is "the same as directly opining on the truthfulness of the complaining witness," *Myers*, 382 N.W.2d at 97, such testimony invades the province of the jury.

> Unless the function of a jury is to find the truth, its role is devoid of substance. Often the jury can meet this obligation only by determining the credibility of witnesses. The jury system, with all its imperfections, has served society well. It has not been demonstrated that the art of psychiatry has yet developed into a science so exact as to warrant such a basic intrusion into the jury process.

*State v. Walgraeve*, 243 Or. 328, 333, 413 P.2d 609, 609–10 (1966).

## III.

In *State v. Kim*,[1] *supra*, the defendant was convicted of second degree rape of his 13–year–old stepdaughter. On cross–

---

[1] *Kim* has been adversely criticized by several jurisdictions which have had the opportunity to consider this issue. *See Myers*, 382 N.W.2d 91, 97 (Iowa 1986); *State v. Middleton*, 294 Or. 427, 437, 657 P.2d 1215, 1221 (1983). Most other

examination, defense counsel attempted to impeach the complainant's testimony by establishing her lack of credibility on other occasions. To rehabilitate the complainant's credibility, the State called on Dr. Mann as an expert witness who had examined the complainant shortly after the alleged incident in the capacity of a treating physician. Dr. Mann testified as to common emotional reactions of victims of sexual abuse. He then went on to opine that the complainant was "believable" based on his examination of the complainant and interviews with the complainant's mother and with the defendant.

Our court, recognizing an expert generally may not testify as to the credibility of a witness, nevertheless carved an exception in *Kim*. Finding child sexual abuse to be outside the common experience of the jury, the court held that "an expert's assessment of credibility may arguably provide the jury with potentially useful information[.]" *Kim*, 64 Haw. at 607, 645 P.2d at 1337. Although troubled by Dr. Mann's statement that the complainant was "believable," this court did not deem its admission as reversible error in the case.

In *Castro, supra*, the defendant was accused of attempting to murder his girlfriend. The incident occurred in a bar where several witnesses were present. At trial, the defense attorney attempted to impugn the victim's credibility through cross–examination. The State, therefore, called a psychologist who gave opinion testimony about the victim's credibility. The trial court allowed the psychologist's testimony based on *Kim*. This court held that

---

jurisdictions which have considered this issue have not adopted the holding in *Kim*. In addition to cases cited in the text of this opinion, *see also State v. Milbradt*, 305 Or. 621, 756 P.2d 620 (1988); *People v. Higa*, 735 P.2d 203 (Colo. App. 1987); *People v. Server*, 148 Ill. App. 3d 888, 102 Ill. Dec. 239, 499 N.E.2d 1019 (1986); *State v. Fitzgerald*, 694 P.2d 1117 (Wash. App. 1985); *State v. Taylor*, 663 S.W.2d 235 (Mo. 1984).

admission of such testimony constituted reversible error. The court explicitly limited the use of expert testimony regarding credibility to child sexual abuse cases. It reasoned that

> child sexual abuse is a particularly mysterious phenomenon, often involving an unusual cast of characters who are involved in relationships that are seemingly inexplicable to most people . . . . [E]xpert testimony could reveal characteristics or conditions of the child victim of sexual abuse and further the jury's understanding of what in all likelihood was unfamiliar and mysterious.

*Castro*, 69 Haw. at 648, 756 P.2d at 1044 (citations and internal quotation marks omitted).

Shortly after *Castro*, this court decided in *In re Doe*, 70 Haw. 32, 761 P.2d 299 (1988), that testimony regarding the victim's credibility was erroneously admitted to the defendant's prejudice. In that case, a juvenile was accused of sexually abusing a 4–year–old child. The child complainant was unable to testify, but the child's mother and pre–school teacher testified as to what the child had related to them. The teacher was asked her opinion of the child's truthfulness. She responded that the child "wasn't lying." Even though the teacher was not an expert in the field of child sex abuse, as the State's witness, her opinion was elicited during direct examination prior to the alleged victim's credibility becoming an issue.

In both *Castro* and *Doe*, the prosecutor argued and the trial court agreed that *Kim* permitted the admission of testimony on a witness' credibility. This court disagreed. *Castro* and *Doe* were clearly distinguishable from *Kim*, therefore, this court did not have to reconsider the holding in *Kim*. The facts of this case, however, are sufficiently similar to *Kim* that this court is now squarely faced with the issue of whether *Kim* remains viable. Here, Defendant is alleged to have sexually abused his minor daughter; there are no

third–party witnesses to the incidents; the Complainant's credibility was attacked at trial; and Dr. Bond was a qualified expert.

## IV.

We are cognizant that cases involving allegations of child sexual abuse are difficult to prove, but they are equally difficult to defend against. Courts must proceed with caution in admitting expert testimony in these cases. The trial court must be satisfied that the witness is indeed an expert and that the testimony is relevant. The testimony must further be shown to assist the jury to comprehend something not commonly known or understood. And experts may not give opinions which in effect usurp the basic function of the jury. The trial court must keep in mind that an expert's opinion on the credibility of a victim is always suspect of bias and carries the danger of unduly influencing the triers of fact. Furthermore, even objective opinions of experts regarding a victim's credibility is no more reliable than the determination of the victim's credibility by the triers of fact.

## V.

In this case, although Dr. Bond's qualification as an expert was not objected to, his testimony regarding general principles of social or behavioral science of a child victim in a sexual abuse case was so minuscule, we are convinced that his testimony could not have assisted the jury in understanding an otherwise bizarre behavior. In fact, Dr. Bond several times asked the jury to recall their own childhood days and suggested that Complainant's actions were actions of normal children under similar circumstances. When queried about retractions of accusations—a common behavior recognized as unique to intrafamily sex abuse—Dr. Bond admitted that he lacked data on the subject. Finally, when Dr.

Bond was asked to evaluate Complainant's credibility in her accusation of sexual abuse by Defendant, he did not explicitly say that Complainant was "truthful" or "believable," but there is no doubt in our minds that the jury was left with a clear indication of his conclusion that Complainant was truthful and believable.

We hold that Dr. Bond's testimony was impermissible under HRE Rule 702 and therefore clearly prejudicial to Defendant. To the extent that any holding in *Kim* is inconsistent with our holding herein, such holding in *Kim* is overruled.

Defendant's conviction is vacated. Case is remanded for a new trial. [2]

*Susan L. Arnett* (*Lynette Mah Matsushima* on the briefs), Deputy Public Defenders, for defendant–appellant.

*Patricia Amy Loo*, Deputy Prosecuting Attorney, for plaintiff–appellee.

---

[2] The disposition of this case on the issue of the admission of Dr. Bond's testimony renders unnecessary a discussion of Defendant's other points of error.