**STATE OF HAWAII**, Plaintiff–Appellee, v. **ODIN ORTIZ**, Defendant–Appellant

NO. 15692

(FC–CR. NO. 91–3067)

FEBRUARY 9, 1993

LUM, C.J., WAKATSUKI,* MOON, KLEIN, AND LEVINSON, JJ.

---

*Associate Justice Wakatsuki, who heard oral argument, passed away on September 22, 1992. *See* HRS § 602–10 (1985).

## OPINION OF THE COURT BY KLEIN, J.

On October 24, 1991, following a bench trial, Defendant–Appellant Odin Ortiz (Appellant) was found guilty of physically abusing his wife, Emily Paia–Ortiz (Emily), in violation of Hawaii Revised Statutes (HRS) § 709–906 (Supp. 1991) (Abuse of family and household members). Appellant received a thirty–day sentence of imprisonment for this misdemeanor conviction. Appellant filed a motion for stay of sentence, or in the alternative, for release pending appeal, which was denied by order of the circuit court on October 30, 1991. Appellant next filed a notice of appeal together with a motion for release on bail pending appeal. On November 20, 1991, we deferred a decision on the motion until the parties fully

briefed the issue of whether Appellant was entitled to post–conviction bail as a matter of right under HRS § 804–4 (Supp. 1992). Appellant was granted a stay of sentence until we could fully consider his arguments.

We now address the issue of Appellant's post–conviction right to bail as well as the trial errors alleged on appeal.

## I.

At the start of trial, Appellant moved to dismiss or continue the case because Emily was absent. Appellant argued that Emily's absence was a denial of his right to cross–examine her concerning the injury she allegedly received from him. Appellant further argued that because Emily was a material witness the prosecution had the obligation to produce her and make her available for cross–examination if necessary.[1] The trial court disagreed and denied the motion to dismiss.

The prosecution's case consisted of two witnesses: Emily's father, George Paia (Paia), and Honolulu Police Officer Darren Akiyama (Akiyama).[2] Both Paia and Akiyama recounted hearsay statements made by Emily. Over Appellant's counsel's objections, the hearsay declarations were received in evidence as excited utterances under Hawaii Rules of Evidence (HRE) Rule 803(b)(2).

---

[1] Appellant acknowledged that he did not subpoena Emily because he had no obligation to bring witnesses against himself. Appellant asserted, however, that he had a right to cross–examine Emily if necessary.

[2] At trial, the prosecution made no showing of Emily's unavailability. The record also indicates that the prosecution failed to serve Emily with a trial subpoena.

Paia testified that around 2:00 a.m. on June 29, 1991, while he was watching television in his livingroom, Emily and Appellant were having a conversation. Over Appellant's counsel's objections on the grounds of hearsay, Paia further testified that he did not pay much attention to their conversation until he heard Emily say, "[w]hy did you hit me for?" Paia then looked at Emily and saw that she was holding her face. Paia noticed that "[s]he was crying because tears was coming out — down her eyes that she was hurt." Upon hearing Emily's statement, Paia immediately went to a nearby phone booth and called the police.[3]

On cross–examination, Paia testified that he did not hear any noise that sounded "like one person hitting another" because he was paying attention to the television. He also admitted that he did not know at what point Appellant allegedly struck Emily.

Akiyama testified that on June 29, 1991 he was dispatched to the residence at about 2:30 a.m. and arrived there about five minutes later. When he arrived, he was met by Emily, crying and upset. Emily told Akiyama that her head was sore. Akiyama spoke with Emily for ten minutes after his arrival at the scene. During that time, Emily stopped crying and told him that Appellant had struck the left side of her head once with his closed fist.[4]

On cross–examination, Akiyama testified that he saw no injuries on Emily. When asked if Emily described the circumstances surrounding the incident, Akiyama

---

[3] Paia testified that it took him five minutes to get to the pay phone and about eight minutes to return home because he had to climb steps to get back up to the apartment.

[4] Officer Akiyama further testified that Appellant denied hitting Emily.

testified that Emily told him that she and Appellant were arguing. Emily told Akiyama that she was struck by Appellant when she tried to intervene in an argument between Appellant and Paia about the noise Appellant was making while fixing a screen door. When Paia, however, was cross–examined by Appellant, he testified that the screen door incident occurred two or three days prior to the night Emily was allegedly struck by Appellant.

When Appellant took the stand, he testified that he did not hit Emily on June 29, 1991. Appellant stated that Emily was referring to a prior incident in January. Appellant told the court that on January 20, 1991, he argued with Emily about an extramarital affair and then hit her.[5]

The trial court, nevertheless, determined that the material allegations contained in the complaint had been proved beyond a reasonable doubt and found Appellant guilty. The court then ordered Appellant, who had been released on bail pending the outcome of the trial, to begin immediately serving his thirty–day sentence.

In the interval between Appellant's conviction and issuance of the mittimus, Appellant unsuccessfully argued that HRS § 804–4 granted him the right to be continued on bail pending appeal. The trial court ruled that under HRS § 804–4 two factors must be considered before allowing Appellant to be continued on bail after conviction: 1) whether clear and convincing evidence proved Appellant would neither be a flight risk nor a danger to any other person or the community; and 2) whether the appeal was not for the purpose of delay and raised sub-

---

[5] Appellant further testified that he was arrested, pled guilty to spouse abuse, and was ordered to spend two days in jail for the January incident.

stantial issues likely to result in a reversal or an order for a new trial. *See* HRS §§ 804–4(1) and 804–4(2).

In response to the second statutory factor, Appellant submitted that the issue on appeal would be whether Emily's statements were properly admitted under the excited utterance exception to the hearsay rules. The trial court denied the motion on the basis that the issue did not "raise a substantial question of law or fact likely to result in reversal or an order for a new trial."

## II.

Appellant argues that because he was charged with a misdemeanor offense and admitted to bail, the applicable provisions of HRS § 804–4 guaranteed his unconditional right to remain free on bail pending the outcome of his appeal. The prosecution's counter–argument is that *all* persons sentenced to a term of imprisonment, regardless of the gravity of the offense for which they were convicted, may be "detained" (held without bail) unless the court finds that the factors enumerated in HRS § 804–4(1), (2) have been satisfied.[6]

In support of its position that HRS § 804–4 was correctly applied to deny Appellant's post–trial motion, the prosecution urges that a plain reading of the statute requires the court to consider the statutory factors when a

---

[6] The factors provided by HRS § 804–4(1), (2) are:

    (1)   By clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and

    (2)   That the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

HRS § 804–4(1), (2) (Supp. 1992).

defendant "has been found guilty of *an offense* and sentenced to a term of imprisonment and . . . has filed an appeal." HRS § 804–4 (emphasis added). Because HRS § 804–4 is ambiguous with respect to the bail status of a convicted *misdemeanant*,[7] we look to principles of statutory construction and the legislative history of the statute for guidance.

The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. *State v. Briones*, 71 Haw. 86, 92, 784 P.2d 860, 863 (1989). It is a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to

---

[7] HRS § 804–4 provides in pertinent part:

**When a matter of right.** If the charge is for an offense for which bail is allowable under section 804–3, the defendant may be admitted to bail before conviction as a matter of right. *The right to bail shall continue after conviction of a misdemeanor,* petty misdemeanor, or violation, and release on bail may continue, in the discretion of the court after conviction of a felony . . . except that . . . no bail shall be allowed pending appeal of a felony conviction where a sentence of imprisonment has been imposed. *The court shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the court finds*:

(1) By clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and

(2) That the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

If the court makes such findings, the court shall order the release of the person in accordance with the provisions of section 804–7.1.

HRS § 804–4 (Supp. 1992) (emphasis added).

and preserve all words of the statute. *State v. Wallace*, 71 Haw. 591, 594, 801 P.2d 27, 29 (1990) (quoting *Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984)). Penal statutes are to be strictly construed. *State v. Burgo*, 71 Haw. 198, 202, 787 P.2d 221, 223 (1990). However, the strict construction rule does not permit the court to ignore legislative intent, nor require the court to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved. *State v. Smith*, 59 Haw. 456, 461, 583 P.2d 337, 341–42 (1978); *State v. Mundell*, 8 Haw. App. 610, 616, 822 P.2d 23, 27, *cert. denied*, 72 Haw. 619, 841 P.2d 1075 (1991).

Until 1987, bail was clearly a matter of right pending appellate review for all persons accused, convicted, or sentenced on charges classified as misdemeanors, petty misdemeanors, or violations. HRS § 804–4 (1985).[8] From 1980 to 1987, convicted *felons* sentenced for a term of imprisonment had any prior bail status automatically revoked, regardless of pending appeals. *Id.* The language of the 1987 amendment to HRS § 804–4 provided sentenced felons with an opportunity to continue on previously granted bail status pending an appeal if two statutory factors were satisfied.[9] The 1987 amendment,

---

[8] HRS § 804–4 provided in pertinent part:

**When a matter of right.** If the charge is for an offense for which bail is allowable under section 804–3, the defendant may be admitted to bail before conviction as a matter of right. *The right to bail shall continue after conviction of a misdemeanor, petty misdemeanor, or violation*, and release on bail may continue, in the discretion of the court after conviction of a felony . . . except that . . . *no bail shall be allowed pending appeal of a felony conviction where a sentence of imprisonment has been imposed.*

HRS § 804–4 (1985) (emphasis added).

[9] *See supra* note 6.

however, inadvertently created a facial ambiguity with respect to the bail status of sentenced misdemeanants, petty misdemeanants, and violators. HRS § 804–4.[10] Legislative history clarifies this ambiguity.

In 1987, the Senate submitted a proposed amendment, Senate Bill No. 800, Senate Draft 1, addressing certain sections of the HRS chapter relating to bail. Amendments to a person's right to post–conviction bail (HRS § 804–4) were not part of the originally proposed bill. The Hawaii Association of Criminal Defense Lawyers (HACDL) brought to the attention of the House of Representatives a significant issue that needed to be addressed by the proposed amendment: "[t]he fact that a defendant convicted of a felony and sentenced to imprisonment cannot have any bail pending appeal even though the defendant may have a meritorious appeal and ultimately win." Letter from Samuel King, Jr., President, HACDL, to the Honorable Wayne Metcalf, Chairman, Judiciary Committee (25 Mar. 1987). HACDL's letter further stated, "the solution to the problem now is to adopt the federal system relating to bail pending appeal." *Id.* HACDL's proposed amendment would have added the following language to Senate Bill 800, Senate Draft 1:

> [A]nd provided further that no bail shall be allowed pending appeal of a felony conviction where a sentence of imprisonment has been imposed *unless the trial court or appellate court finds that the appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.* (Emphasis added.)

---

[10] *See supra* note 7.

Instead of HACDL's amendment, the legislature added wording that almost exactly tracked the federal statute then in existence, 18 U.S.C. § 3143.[11]

HRS § 804–4 was amended in 1987 by adding:

[T]he court shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the court finds:

(1) By clear and convincing evidence that the person is not likely to flee or pose a danger to

---

[11] In 1987, 18 U.S.C. § 3143 provided in relevant part:

**(b) Release or detention pending appeal by defendant.**—The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial, or a sentence that does not include a term of imprisonment.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title.

Quoted in 18 U.S.C.A. § 3143 (1985) as amended by Act of Nov. 10, 1986, Pub. L. 99–646, §§ 51(a), (b), 55(a), (d), 100 Stat. 3605–3607, 3609.

18 U.S.C. § 3156(2) (1988) provides:

(2) the term "offense" means any criminal offense, other than an offense triable by court–martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by an Act of Congress[.]

the safety of any other person or the community if released; and

(2) That the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

The first amendment to the draft of Senate Bill 800, included in Senate Draft 1, House Draft 1, used the phrasing eventually adopted and signed into law. In amending Senate Bill 800, the House Judiciary Committee was reacting directly to the concerns raised by HACDL.[12] The Committee stated that, "[u]nfortunately, if a criminal defendant is imprisoned after conviction, the statute denies bail, even if his appeal appears meritorious." Hse. Stand. Comm. Rep. No. 1038, in 1987 House Journal, at 1603. The Committee's statement undoubtedly referred to imprisonment after a *felony* conviction because, under the statute then in existence, convicted misdemeanants, petty misdemeanants, and law violators retained the right to bail throughout an appeal. HRS § 804-4 (1985) ("The right to bail shall continue after conviction of a misdemeanor, petty misdemeanor or violation[.]"). Because the legislature retained the specific language concerning post–conviction bail rights for those convicted of lesser offenses, we conclude that the lawmakers intended to

---

[12] "The Hawaii Association of Criminal Defense lawyers raised a new issue that your committee adopted and placed into the bill." Hse. Stand. Comm. Rep. No. 1038, in 1987 House Journal, at 1603.

It should be noted that HACDL's letter to the House was dated March 25, 1987. It was only 9 days later, April 3, 1987, that the House had the amendment, in what was to be its final form, submitted for approval.

impose the federal standard on convicted felons[13] who were sentenced to prison, rather than on all those convicted and subsequently sentenced to prison.[14]

We hold that under governing principles of statutory construction and the legislative history concerning the right to bail, the trial court erred when it denied Appellant's motion for bail pending appeal. An accused misdemeanant, petty misdemeanant, or law violator on bail is entitled to bail as a matter of right after conviction and pending appellate review. We need not decide, therefore, whether Ortiz satisfied the requirements of HRS § 804–4(1), (2); these provisions apply only to convicted felons.

## III.

Appellant argues that the circuit court erred when it admitted, under the excited utterance exception to the hearsay rule, Emily's out of court statements concerning the injury she allegedly received from Appellant. We agree as to Akiyama's testimony, but not as to Paia's. Additionally, because Emily was not present at trial,

---

[13] We have had only one opportunity to examine this statute since the 1987 amendments. In *State v. Avilla*, 69 Haw. 509, 750 P.2d 78 (1988), a convicted felon argued that he should be allowed bail pending appeal if he could meet the newly imposed standards, even though he was indicted before the effective date of the amended statute. Whether the new standards applied to convicted criminals other than felons convicted and sentenced to prison was not a question presented for this court's review nor subsequently addressed.

[14] The federal bail statutes, 18 U.S.C. §§ 3141–3156 (1988), consistently define "offenses" as including all criminal offenses. Unlike HRS § 804–4, no federal exceptions or exclusionary clauses exist to modify the effect of 18 U.S.C. § 3143(b) (1988). *See supra* note 7.

Appellant contends that his constitutional right to confront the witnesses against him was violated. We agree.

A.

Hearsay is defined by the Hawaii Rules of Evidence (HRE) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801(3). "[Hearsay] is inadmissible at trial, unless it qualifies as an exception to the rule against hearsay." *Shea v. City & County*, 67 Haw. 499, 505, 692 P.2d 1158, 1164 (1985); *Kekua v. Kaiser Found. Hosp.*, 61 Haw. 208, 217, 601 P.2d 364, 370 (1979). Here, the circuit court concluded that Paia's and Akiyama's testimony constituted hearsay insofar as it included Emily's statements. Nevertheless, the hearsay declarations were admitted under the "excited utterance" exception of the rule against hearsay.[15]

The prosecution argues that Akiyama's testimony was properly admitted under the excited utterance exception. A comparable factual situation was presented in *State v. Dunn*, 8 Haw. App. 238, 246, 798 P.2d 908, 912 (1990), where the Intermediate Court of Appeals (ICA) sustained the admissibility of a police officer's testimony that included an excited utterance. In *Dunn*, a police officer was dispatched to the defendant's home after an anonymous caller reported a domestic dispute where "a male was beating up a female." *Id.* at 244, 798 P.2d at 911. Upon arriving at the home, the officer spoke with the defendant's wife. *Id.* When asked if she had been beaten,

---

[15] HRE Rule 803(b)(2) defines an excited utterance as: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

defendant's wife pointed to her injuries and told the officer that her husband had thrown her out of the house and down the front steps of the residence. *Id.* at 245, 798 P.2d at 912.

On appeal, the defendant argued that trial counsel should have objected to the officer's testimony regarding the wife's hearsay statements. The ICA held the officer's testimony admissible under the excited utterance exception because the wife's condition indicated that the alleged offense had occurred a short time before the officer arrived, and she was still "under the stress of the excitement caused by the event."[16] *Id.* at 246, 798 P.2d at 912–13.

In evaluating whether a statement was made while the declarant was under the stress of excitement caused by an event, the time span between the event and the making of the statement must be very short. *See Shea*, 67 Haw. at 506, 692 P.2d at 1164; *State v. Messamore*, 2 Haw. App. 643, 649, 639 P.2d 413, 418 (1982). In *Shea*, the court held that a ten–minute interval between the event and the utterance "could not be said to have been very short[.]" *Shea*, 67 Haw. at 506, 692 P.2d at 1164.

In *In re John Doe, Born on November 23, 1970*, 70 Haw. 32, 38, 761 P.2d 299, 303 (1988), this court reaffirmed that the crucial element buttressing the reliability of an excited utterance is its spontaneity. Therefore, certain foundational requirements must be satisfied in order to admit hearsay under the excited utterance exception: (1) the statement must be reasonably contemporaneous with the event; (2) the statement must be proximately

---

[16] The facts in *Dunn* do not specify what the time interval was between the alleged offense and the wife's statement to the police officer.

caused by the startling event; and (3) the statement must be made without opportunity for deliberation or other influence. *Id.*; *see also* **State v. Beyer**, 72 Haw. 469, 472, 822 P.2d 519, 521 (1991).

Although the facts in the instant case are similar to the situation in *Dunn*, the interval between the startling event and the declarant's statement to the police cannot satisfy the foundational requirements set forth in *Doe*. The record is unclear as to how many minutes elapsed between the startling event and Emily's statement to Akiyama. Our review of the record indicates that it was more than twenty minutes.[17] During this period, Emily had sufficient time to contemplate, reflect, and deliberate about the incident before answering Akiyama's questions. Therefore, we hold that the statement was not reasonably contemporaneous with the event and that Akiyama's testimony was improperly admitted by the trial court.

Concerning Paia's testimony, Appellant argues that the requirements of HRE Rule 803(b)(2) were not satisfied because no startling event was ever established and because, although Emily's statement relates to an allegedly startling event, the statement cannot be used to establish that the startling event had in fact occurred.

After reviewing the record, we conclude that Paia's testimony regarding Emily's declaration satisfies the foundational requirements of *Doe*. Paia testified that he heard Emily say, "Why did you hit me for?" He then looked up and saw her crying and holding the side of her face.

---

[17] At least twenty minutes elapsed from the time Paia called for help and Akiyama arrived at the scene and spoke with Emily. Paia testified that it took him five minutes to walk to a phone booth to call the police. Officer Akiyama testified that it took him five minutes to arrive at the scene and it wasn't until ten minutes after his arrival that he actually spoke with Emily.

The weight of the extrinsic evidence adequately shows that a startling event had in fact occurred and that the startling event and subsequent hearsay statement were reasonably contemporaneous. First, Emily's physical condition, crying and holding her face, indicates that the alleged offense occurred immediately prior to her declaration. Second, her physical condition supports a conclusion that the statement was proximately caused by Appellant's action of striking Emily's head. Third, because the time span between the startling event and the excited utterance heard by Paia was very short, it is unlikely that Emily reflected on or planned her statement. Because reliable evidence, extrinsic to the startling event, supports a conclusion that the event occurred, a fact finder is entitled to rely on the event as a predicate for the admission of Emily's out of court declaration. Accordingly, we hold that the judge properly admitted Paia's testimony regarding Emily's out of court statement under the excited utterance exception.

### B.

The sixth amendment to the United States Constitution and article I, section 14 of the Hawaii Constitution[18] guarantee an accused the right to confront adverse witnesses. The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses. *State v. Rodrigues*, 7 Haw. App. 80, 84, 742 P.2d 986, 989 (1987).

---

[18] Article I, section 14 of the Hawaii Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]"

Appellant argues that the circuit court denied him his right of confrontation when it allowed hearsay testimony without a showing of the unavailability of the declarant as required by the confrontation clause. The prosecution contends that the reliability and trustworthiness of the excited utterance exception is sufficient to permit such statements to be admitted at trial without showing the unavailability of the witness.

In *Ohio v. Roberts*, 448 U.S. 56 (1980), the United States Supreme Court held that the confrontation clause restricts the range of admissible hearsay in two ways. First, the prosecution must either produce, or demonstrate the unavailability of, a declarant whose statement it wishes to use against a defendant. *Id.* at 65. Second, upon a showing that the witness is unavailable, only statements that bear adequate indicia of reliability are admissible. *Id.*; *Rodrigues*, 7 Haw. App. at 84, 742 P.2d at 989 (citing *Dutton v. Evans*, 400 U.S. 74, 89 (1970)). Reliability is shown "if the evidence falls within a firmly rooted hearsay exception" or "upon a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. Moreover, these requirements must be satisfied at the time of trial because the right to confrontation is basically a trial right. *Rodrigues*, *supra* (citing *Barber v. Page*, 390 U.S. 719 (1968)).

The Supreme Court subsequently narrowed its reading of the confrontation clause and recognized that a declarant's hearsay statement may sometimes be admitted at trial even though the declarant is available for cross–examination. *See United States v. Inadi*, 475 U.S. 387 (1986). The *Inadi* decision held that the confrontation clause does not require a showing of unavailability as a condition to the admission of an out–of–court statement of a nontestifying co–conspirator. *Id.* at 396–400.

By doing so, the Supreme Court rejected the proposition established in *Roberts* that "no out–of–court statements would be admissible without a showing of unavailability." *Id.* at 392.

Later, in **White v. Illinois**, ___ U.S. ___, 112 S. Ct. 736, 737 (1992), the Supreme Court held that the confrontation clause does not require the prosecution to produce the declarant at trial or the trial court to find the declarant unavailable before admitting testimony under the spontaneous declaration (*i.e.*, excited utterance) exception to the hearsay rule. The Court further clarified the scope of *Roberts* by stating that the "[u]navailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out–of–court statements were made in the course of a prior judicial proceeding." *Id.* at 741.

In *Rodrigues*, the ICA recognized the importance of the confrontation clause, but drew a distinction between *Roberts* and *Inadi*. In *Rodrigues*, the ICA found the declarant's out–of–court identification to be "more like the prior judicial testimony at issue in *Roberts* than like the contemporaneous co–conspirator statements involved in *Inadi*, and thus both *Roberts* requirements had to be satisfied." **Rodrigues**, 7 Haw. App. at 86, 742 P.2d at 990.

Although the ICA correctly applied *Roberts* in the *Rodrigues* case, it is necessary to clarify our declination of the Supreme Court's tests utilized in *Inadi* and *White*. A showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants. Although excited utterances have certain guarantees of reliability, we also recognize that the right to confront an accuser should not be abandoned simply because the alleged incriminating statement was made spontaneously. Thus, we choose to follow the Supreme Court test set forth in *Roberts*.

In *State v. Beyer*, 72 Haw. 469, 473, 822 P.2d 519, 521 (1991), we held that a defendant's right of confrontation was violated when the trial court admitted a statement by the allegedly abused household member to the police where it was not shown that the household member was unavailable; and where the statement made did not qualify under any exception to the hearsay rule. We further explained that:

> While it is true that mere absence of the complaining witness, where there have been *vigorous and appropriate steps to procure the complaining witness' presence at trial*, does not necessarily constitute a violation of the right of confrontation if the out–of–court statements of the complaining witness have been made in such circumstances as to be so reliable that cross–examination does not appear necessary or there has been an opportunity for cross–examination, *State v. Rodrigues*, 7 Haw. App. 80, 742 P.2d 986 (1987), that is not the case here.

*Id.* (citation omitted and emphasis added).

To demonstrate the unavailability of a declarant at trial, the prosecution must show that it made a good faith attempt to secure his or her presence. *Rodrigues*, 7 Haw. App. at 86, 742 P.2d at 990. To establish this good faith attempt, the prosecution must confirm on the record at the time of trial both the declarant's unavailability and that vigorous and appropriate steps were taken to procure the declarant's presence at trial. *Id.* In this case, the record indicates that the prosecution failed to issue a trial subpoena to Emily and failed to make a showing of her unavailability. Thus, the trial court improperly admitted Paia's testimony.

Based on the facts disclosed in the record, Appellant's right to confrontation under article I, section 14 of the Hawaii Constitution was violated. Accordingly, we vacate Appellant's judgment of conviction and remand for retrial consistent with this opinion.

*Richard Pollack*, public defender (*Dale K. Mattice*, deputy public defender, with him on the briefs) for defendant–appellant.

*James Anderson*, deputy prosecuting attorney, for plaintiff–appellee.